**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SIETEL SINGH GILL, individually and on behalf of other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE, and NFL ENTERPRISES LLC,<br>Defendants. | Case No. 1:21-cv-01032-PAE |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6)**

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** .......... **1**

**BACKGROUND** .......... **2**

A. The Parties .......... 2

B. Game Pass Subscriptions .......... 3

C. The Complaint .......... 5

**ARGUMENT** .......... **5**

A. The Complaint Does Not, And Cannot, Plead The Existence Of A Contract Between Plaintiff and Defendants .......... 6

B. The Lack Of Contractual Privity Between Plaintiff And Defendants Is Fatal To Plaintiff's Breach of Implied Warranty Claim .......... 9

C. Plaintiff's Unjust Enrichment Claim Must Be Dismissed As A Matter Of Law .......... 10

**CONCLUSION** .......... **11**

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ..... 2, 5

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*,
No. 03 Civ. 1537 (MBM), 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ..... 6, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 5, 6

*Black Car and Livery Insurance, Inc., v. H & W Brokerage, Inc.*,
28 A.D.3d 595 (2d Dep't 2006) ..... 7

*Blank v. Noumair,*
239 A.D.2d 534 (2d Dep't 1997) ..... 7

*Broder v. Cablevision Systems Corp.,*
418 F.3d 187 (2d Cir. 2005) ..... 6

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
70 N.Y.2d 382 (1987) ..... 10

*Corsello v. Verizon N.Y., Inc.*,
18 N.Y.3d 777 (2012) ..... 10

*Duckett v. Williams*,
86 F.Supp.3d 268 (S.D.N.Y. 2015) ..... 6

*Global Network Communications, Inc. v. City of New York,*
458 F.3d 150 (2d Cir. 2006) ..... 6

*Goldman v. Metro. Life Ins. Co.*,
5 N.Y.3d 561 (2005) ..... 10

*In re First Cent. Fin. Corp.*,
377 F.3d 209 (2d Cir. 2004) ..... 10

*Inter Impex S.A.E. v. Comtrade Corporation,*
No. 00 Civ. 0133 (GBD), 2004 WL 2793213 (S.D.N.Y. Dec. 6, 2014) ..... 9

*Mahoney v. Endo Health Solutions, Inc.,*
No. 15 Civ. 9841 (DLC), 2016 WL 3951185 (S.D.N.Y. July 20, 2016) ..... 9

*Maki v. Travelers Companies, Inc.,*
145 A.D.3d 1228 (3d Dep't 2016) ..... 7

*Mandarin Trading Ltd. v. Wildenstein*,
16 N.Y.3d 173 (2011) .....7

*Marshall v. Hyundai Motor America*,
51 F.Supp.3d 451 (S.D.N.Y. 2014).....6, 7

*Metro. Elec. Mfg. Co. v. Herbert Constr. Co*.,
183 A.D.2d 758 (2d Dep't 1992) .....10

*Network Enters., Inc. v. Reality Racing, Inc*.,
No. 09 Civ. 4664 (RJS), 2010 WL 3529237 (S.D.N.Y. Aug. 24, 2010) .....10

*Reyes v. Crystal Farms Refrigerated Distribution Company,*
No. 18 Civ. 2250 (NGG) (RML), 2019 WL 3409883 (E.D.N.Y. July 26, 2019).....9

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC,*
127 F.Supp.3d 156 (S.D.N.Y. 2015).....2

Defendants National Football League ("NFL") and NFL Enterprises LLC ("NFLE") respectfully submit this memorandum of law, together with the Declaration of Sara A. Ricciardi, sworn on April 8, 2021, in support of their motion, under Federal Rule of Civil Procedure Rule 12(b)(6), to dismiss the Complaint of Plaintiff Sietel Singh Gill (the "Complaint"), in its entirety and with prejudice.

**PRELIMINARY STATEMENT**

Plaintiff is an Australian citizen who brings this action after allegedly experiencing interruptions in the live-streaming of Super Bowl LIV on February 1, 2020 (the "2020 Super Bowl"), which he accessed through an online subscription called Game Pass Pro that is made available to individual customers outside the United States who wish to watch the Super Bowl live in their home jurisdictions. Plaintiff seeks to hold Defendants liable for breach of contract, breach of implied warranty of merchantability and unjust enrichment, on behalf of himself and a class of persons who purchased Game Pass Pro subscriptions "from Defendants" for the 2019 to 2020 NFL season.

The Complaint should be dismissed because Plaintiff has not sufficiently alleged the existence of a contract with Defendants, nor could he. Neither NFL nor NFLE operates Game Pass Pro. Neither sold the subscription that Plaintiff purchased or otherwise provided the live-streaming services on which Plaintiff's claims are based. Plaintiff has no contract for such services with Defendants.

Tellingly, the Complaint does not identify with any specificity, much less attach, the contract pursuant to which Plaintiff actually acquired his Game Pass Pro subscription. An examination of the Complaint and the contractual materials incorporated by reference within it demonstrates why the Complaint relies solely on abstract and conclusory allegations without exhibiting the applicable contract. Plaintiff acquired his international Game Pass Pro subscription from third parties, unaffiliated with Defendants and located in the Cayman Islands

and Italy, that operate the Game Pass Pro product to which non-US customers subscribe. The terms of the Game Pass Pro international subscription are governed by, in Plaintiff's case, Australian law and are subject to the jurisdiction of the Australian courts. In respect of the class of subscribers Plaintiff purports to represent, each individual class member's subscription with the Cayman and Italian entities that provide Game Pass Pro to international subscribers is similarly governed by the laws, and subject to the courts, of each subscriber's home jurisdiction.

In sum, there is no contract or service that connects Plaintiff's alleged grievances to the named Defendants, to New York, or to the jurisdiction of this Court. Rather, Plaintiff's allegations concern a contract made outside the United States, between non-US customers and non-US providers of online content, that is governed by the laws and jurisdiction of each customer's home jurisdiction. The fact that the content subscribed to included the Super Bowl does not make for a contract with Defendants, or for any claim falling within the jurisdiction before this Court.

## BACKGROUND[1]

### A. The Parties

Plaintiff, Sietel Singh Gill, is a resident and citizen of New South Wales, Australia. Compl. ¶ 5. In or around July 2019, in advance of the NFL pre-season which began on

---

[1] Well-pled allegations in the Complaint are deemed true solely for the purposes of this motion. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Defendants also refer to the content of certain documents which the Court may properly consider on this motion to dismiss, including "statements or documents incorporated into the complaint by reference . . . and documents possessed or known to the plaintiff and upon which it relied in bringing the suit." *Id.* (citation omitted). In addition, Defendants refer to certain documents of which the Court may properly take judicial notice. *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC,* 127 F.Supp.3d 156, 166–167 (S.D.N.Y. 2015) (holding that courts may take judicial notice of information obtained in independent web searches or publicly available on a party's website). These documents are annexed as Exhibits A–D to the Declaration of Sara A. Ricciardi.

August 1, 2019, Plaintiff purchased a Game Pass subscription for the 2019 to 2020 NFL season. Compl. ¶ 30. Specifically, as a resident of Australia, Plaintiff subscribed to Game Pass International Weekly or Annual "Pro" ("Game Pass International Pro"), which included live coverage of NFL games, including the Super Bowl. Compl. ¶ 12.

Defendant National Football League is an unincorporated association of 32 member clubs. Compl. ¶ 7. Defendant NFL Enterprises, LLC is a limited liability company that oversees digital media for the NFL. Compl. ¶ 9.

**B. Game Pass Subscriptions**

Certain NFL Game Pass subscriptions are available to customers for purchase through the website https://gamepass.nfl.com. Compl. ¶ 14. As is plain on the homepage of https://gamepass.nfl.com (which automatically loads https://gamepass.nfl.com/packages), the subscriptions available through this website are only for users within the United States, Bermuda, Antigua, the Bahamas, and any U.S. territories, possessions and commonwealths (including American Samoa, Guam, Puerto Rico and the US Virgin Islands) and "do[] not include live regular season, playoff, or Super Bowl game broadcasts." Exh. A (screenshot of https://gamepass.nfl.com homepage as at April 6, 2021, which remains materially the same as it was in 2019). The Terms and Conditions available on the website reiterate upfront that "NFL Game Pass is only available to users within the NFL Game Pass Domestic Territories," which are again defined as "the United States, Bermuda, Antigua, the Bahamas, and any U.S. territories, possessions and commonwealths (including American Samoa, Guam, Puerto Rico and the U.S. Virgin Islands)." Exh. B, page 1 (NFL.COM – Subscriptions – Terms and Conditions effective during the 2019-2020 NFL season, Definition of NFL Game Pass). These Terms and Conditions, in clause 1(a), provide that customers "are not authorized to use NFL Game Pass if [they] are located outside of any of the NFL Game Pass Domestic Territories. . ." Exh. B (NFL.COM – Subscriptions – Terms and Conditions, clause 1(a)). They also make

clear that NFL Game Pass in the Domestic Territories is limited to "archived video of regular season and post-season games" (*i.e.,* the Super Bowl); it does *not* include live video of those games. Exh. B (NFL.COM – Subscriptions – Terms and Conditions, Definition of "NFL Game Pass").

For international customers like Plaintiff, https://gamepass.nfl.com redirects customers to https://www.nflgamepass.com/en. International customers are able to purchase international Game Pass subscriptions, including Game Pass International Pro (to which Plaintiff subscribed), through this website by paying a subscription fee. Exh. C (screenshot of https://www.nflgamepass.com/en); Compl. ¶ 14. Unlike NFL Game Pass in the Domestic Territories, the Game Pass International Pro subscriptions available to international customers allow access to a wide range of content, *including* livestreams for the NFL pre-season, season and post-season games, such as the Super Bowl. Exh. C.

The terms that govern the provision of Game Pass International Pro subscriptions to Australian customers, including Plaintiff, are the Subscription Product Terms. Exh. D (Subscription Product Terms effective during the 2019-2020 NFL season, available at https://www.nflgamepass.com/en/terms-of-service). Neither NFL nor NFLE is a party to these Subscription Product Terms. Rather, the Subscription Product Terms are agreed between the international customer and two entities that provide the Game Pass International Pro subscriptions to international customers: Overtier Operations ("Overtier"), a Cayman company, with registration number 319669, with its registered office at P.O. Box 2510, Kensington House, 69 Dr. Roy's Drive, George Town, Grand Cayman KY1-1104 Cayman Islands, and Deltatre S.P.A. ("Deltatre"), an Italian company, registration number IT09489350018 with its registered office via Francesco Millio, 41, 10141 Turin, Italy, n. 09489350018, REA TO – 1056157. Exh. D, clause 2.1 ("Who we are. Overtier Operations who is the official licensee of the content material and Deltatre S.p.A. who operates the

platform. . ."). The Subscription Product Terms contain a governing law and jurisdiction clause which expressly provides that "[t]he governing law and the competent jurisdiction are the one of the country where the consumer has his habitual residence." Exh. D, clause 15.6.

### C. The Complaint

Plaintiff brings this action as a purported class action on behalf of "persons who purchased Game Pass from Defendants for the 2019 to 2020 NFL season." Compl. ¶ 37. Plaintiff purchased a Game Pass International Pro subscription for the 2019-2020 season. Compl. ¶ 12. The Complaint generally alleges that "NFL Game Pass Terms and Conditions purport to govern the Game Pass subscription," Compl. ¶¶ 14, 17, but does not allege (nor could it) that Game Pass International Pro can be purchased through the https://gamepass.nfl.com website. Nor does the Complaint identify with specificity or attach the "NFL Game Pass Terms and Conditions" which it references as the basis for Plaintiff's claims. Instead, the Complaint makes conclusory allegations about the terms upon which Plaintiff subscribed to Game Pass, without referencing any specific contract or clauses. Compl. ¶¶ 14, 17, 30, 31.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The Court must accept as true all well-pleaded *factual* allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (noting that a court

is "not bound to accept as true a legal conclusion couched as a factual allegation"). Where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

Where a plaintiff has relied on the terms and effect of a document, and that document is integral to the complaint, the Court may look at the document itself to determine its terms and need not rely on a plaintiff's description thereof. *Broder v. Cablevision Systems Corp.,* 418 F.3d 187,197 (2d Cir. 2005) (holding that the contract language as pleaded differed from the contract language as it existed in the actual agreement, and that this difference was "fatal" to the breach of contract claims alleged). This rule "prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting." *Global Network Communications, Inc. v. City of New York,* 458 F.3d 150, 157 (2d Cir. 2006).

**A. The Complaint Does Not, And Cannot, Plead The Existence Of A Contract Between Plaintiff and Defendants**

The existence of a contract is a necessary and fundamental element of a breach of contract claim. *See Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ. 1537 (MBM), 2003 WL 23018888, at *17–18 (S.D.N.Y. Dec. 22, 2003), aff'd, 110 F. App'x 191 (2d Cir. 2004) (dismissing breach of contract claim where plaintiff failed to allege an enforceable contract in light of defendant's various disclaimers indicating defendant did not intend to be bound to any contract with plaintiff); *see also Duckett v. Williams*, 86 F.Supp.3d 268, 273 (S.D.N.Y. 2015) (dismissing breach of contract claim where plaintiff failed to allege a binding contract for his benefit). The onus is on the party alleging a breach of contract to demonstrate the existence of that contract by pleading "the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated." *Marshall v. Hyundai Motor America*, 51 F.Supp.3d 451, 468 (S.D.N.Y. 2014).

A breach of contract action must be dismissed where the named defendant is not a party to the relevant agreement. *Black Car and Livery Insurance, Inc., v. H & W Brokerage, Inc.,* 28 A.D.3d 595 (2d Dep't 2006) (holding breach of contract action properly dismissed where respondent was not a party to the agreement in question); *Blank v. Noumair* 239 A.D.2d 534 (2d Dep't 1997) (same); *Maki v. Travelers Companies, Inc.,* 145 A.D.3d 1228 (3d Dep't 2016) (same).

The Complaint relies on conclusory assertions that Plaintiff "entered into valid contracts with Defendants" which "Defendants materially breached . . . by failing to provide a complete live streaming of the Super Bowl." Compl. ¶¶ 54, 55. But Plaintiff does not, as he must, identify any contractual agreement with Defendants, nor any specific terms of the alleged agreement upon which liability is predicated, either by express reference or by attaching a copy of the contract. Indeed, the sole factual allegations relating to the purported contract "with Defendants" consist of vague or otherwise unsupported assertions: (i) that Plaintiff "agreed to pay Defendants AUD 274.99 for the Game Pass subscription for the 2019 to 2020 season" (Compl. ¶ 30); (ii) that "Defendants offer Game Pass as an online platform for digital NFL-related content, including live-streaming of NFL games, through its website at https://gamepassnfl.com" (Compl. ¶ 14); and (iii) that "NFL Game Pass Terms and Conditions purport to govern the Game Pass subscription" (Compl. ¶ 17). Plaintiff fails to attach a copy of those Terms and Conditions or otherwise explain who is party to them or on which specific clauses Plaintiff relies. This failure alone is fatal to the Complaint. *See, e.g., Marshall v. Hyundai Motor America*, 51 F.Supp.3d 451, 468 (S.D.N.Y. 2014) (dismissing breach of contract claim where complaint did not plead the specific contract involved and contained only conclusory allegations that plaintiffs and defendant had entered into contracts by which defendant would provide plaintiffs with vehicles that were fit for purpose or otherwise repair those vehicles); *see also Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 181-82 (2011)

(dismissing breach of contract claim where complaint "only offer[ed] conclusory allegations without pleading the pertinent terms of the purported agreement" and the Court was "left to speculate as to the parties involved and the conditions under which this alleged appraisal contract was formed").

The "NFL Game Pass Terms and Conditions" to which the Complaint refers plainly provide that they are inapplicable to international customers like Plaintiff and instead apply only to individuals within the NFL Game Pass Domestic Territories. Further, the services provided pursuant to those terms do not include the services at issue here – *i.e.* live video or streaming of post-season games such as the Super Bowl. *See* Exh. B (NFL.COM – Subscriptions – Terms and Conditions, definition of "NFL Game Pass" in the preamble and clause 1 "Access to the Products").

The contractual terms which *do* apply to Plaintiff's subscription for a live-stream of regular season and post-season games, including the 2020 Super Bowl, are the Subscription Product Terms for Game Pass International Pro, a product provided by third parties that is available only to individuals residing outside the United States and the other NFL Game Pass Domestic Product Territories. Exh. D, clause 3.4 (detailing the types of subscriptions available, including Game Pass Pro); clause 6 ("Providing the Subscription Products" delineating what the subscription products include). The Subscription Product Terms make clear on their face that Plaintiff's contractual counterparty with respect to Game Pass International Pro is *not* the NFL or NFLE, but rather two third-party entities unaffiliated with Defendants, that provide Game Pass International Pro subscriptions to non-US subscribers. Further, those terms are governed by the law, and subject to the jurisdiction of the courts, of Australia, where Plaintiff has his habitual residence. Exh. D, clause 2.1 ("Who we are. Overtier Operations who is the official licensee of the content material and Deltatre S.p.A. who operates the platform and deals with customer queries…"); clause 15.6 ("Which laws apply to this contract and where you may

bring legal proceedings. The governing law and the competent jurisdiction are the one of the country where the consumer has his habitual residence.”).

Plaintiff therefore has failed to allege the requisite existence of a contract with either NFL or NFLE, or otherwise any claim that properly belongs before this Court. Nor could he. The contract upon which Plaintiff's claims rely is instead with third parties, in Italy and the Cayman Islands, and is governed by the law and courts of Plaintiff's home jurisdiction of Australia. Plaintiff's breach of contract claim should therefore be dismissed with prejudice.

### B. The Lack Of Contractual Privity Between Plaintiff And Defendants Is Fatal To Plaintiff's Breach of Implied Warranty Claim

Without contractual privity, there can be no implied warranty claim for economic loss, because “the creation of the warranty requires a direct exchange between buyer and seller.” *See Inter Impex S.A.E. v. Comtrade Corporation,* No. 00 Civ. 0133 (GBD), 2004 WL 2793213 (S.D.N.Y. Dec. 6, 2014) (dismissing breach of contract and breach of implied warranty claims absent requisite showing of privity for both); *see also Reyes v. Crystal Farms Refrigerated Distribution Company,* No. 18 Civ. 2250 (NGG) (RML), 2019 WL 3409883 (E.D.N.Y. July 26, 2019) (dismissing claim for economic losses based on implied warranty of merchantability because privity did not exist between plaintiff and defendant); *Mahoney v. Endo Health Solutions, Inc.,* No. 15 Civ. 9841 (DLC), 2016 WL 3951185 (S.D.N.Y. July 20, 2016) (same).

Plaintiff's claim for breach of an implied warranty of merchantability is expressly premised on the existence of a New York law-governed contract between Plaintiff and Defendants with respect to Plaintiff's Game Pass International Pro subscription. Compl. ¶ 59. No such contract exists. Plaintiff's claim for breach of implied warranty of merchantability must therefore be dismissed.

### C. Plaintiff's Unjust Enrichment Claim Must Be Dismissed As A Matter Of Law

Dismissal of an unjust enrichment claim is required where there is a valid and enforceable written agreement covering the subject matter of the claim. *See, e.g.*, *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005) (citing *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987)); *see also In re First Cent. Fin. Corp.*, 377 F.3d 209 (2d Cir. 2004); *Metro. Elec. Mfg. Co. v. Herbert Constr. Co*., 183 A.D.2d 758 (2d Dep't 1992). This rule applies equally to unjust enrichment claims against non-parties to the contract. *See Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ. 1537 (MBM), 2003 WL 23018888, at *17 (S.D.N.Y. Dec. 22, 2003), aff'd, 110 F. App'x 191 (2d Cir. 2004) (dismissing unjust enrichment claim given valid contract between defendant and third parties, because "[a] contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter [and this] is true whether the contract is one between parties to the lawsuit, or where one party to the lawsuit is not a party to the contract.") (internal quotations and citations omitted); *Network Enters., Inc. v. Reality Racing, Inc.*, No. 09 Civ. 4664 (RJS), 2010 WL 3529237, at *7 (S.D.N.Y. Aug. 24, 2010) (dismissing unjust enrichment claim as the "existence of a valid and binding contract governing the subject matter at issue" between plaintiff and third party acted to "preclude a claim for unjust enrichment even against a third party non-signatory to the agreement"). Because Plaintiff's unjust enrichment claim is based on and arises out of the subject matter set forth in the Subscription Product Terms, Plaintiff's unjust enrichment claim fails as a matter of law.

Further, Plaintiff's unjust enrichment claim must be dismissed as duplicative of the first two causes of action in contract. *See Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."); *see also Reality Racing*, 2010 WL 3529237, at *7

("[U]njust enrichment may not be plead [sic] in the alternative alongside a claim that the defendant breached an enforceable contract.") (internal quotations and citation omitted).

**CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed in its entirety and with prejudice.

Dated: New York, New York
April 8, 2021

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

By: */s/ Tyler B. Robinson*

Tyler B. Robinson
trobinson@stblaw.com
Sara A. Ricciardi
sricciardi@stblaw.com
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Defendants*
*National Football League*
*NFL Enterprises LLC*