**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SIETEL SINGH GILL, individually and on behalf of other similarly situated individuals,<br><br>          Plaintiff,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE, a New York unincorporated association, and NFL ENTERPRISES, LLC, a Delaware limited liability company,<br><br>Defendants. | Civil Action No. 1:21-cv-1032<br><br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTION TO STRIKE THE CLASS ALLEGATIONS AS FUTILE, PURSUANT TO RULE 23**<br><br><u>ORAL ARGUMENT REQUESTED</u> |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 4

    A.    Defendants' NFL Game Pass ..................................................................... 4

    B.    Plaintiff's Subscription to Game Pass ...................................................... 4

    C.    Live Streaming Fails During the 2020 Super Bowl .................................. 5

    D.    Defendants' Supposed Use of Third Parties Related to Game Pass ........... 6

ARGUMENT ........................................................................................................... 6

    I.    Each of Defendants' Arguments for Dismissal Fails ............................................. 7

    A.    Legal Standard ......................................................................................... 7

    B.    Plaintiff Adequately Alleges Breach of Contract ..................................... 7

        1.    The FAC Contains Sufficient Factual Allegations to Support the
            Existence of a Contract with the NFL ............................................... 7

        2.    Defendants' Contention that Plaintiff Instead Contracted with
            Third Parties is Incorrect and is Improperly Raised on a Motion to
            Dismiss .......................................................................................... 9

        3.    Nothing in the FAC Contradicts the Original Complaint ............. 10

    C.    Plaintiff Has Sufficiently Alleged Privity to Support His Implied Warranty
        of Merchantability Claim ........................................................................ 11

    D.    Plaintiff's Unjust Enrichment Claim Is Viable and May be Pled in the
        Alternative ............................................................................................. 13

        1.    Plaintiff Has Pled a Viable Unjust Enrichment Claim .................. 13

        2.    Plaintiff May Bring His Unjust Enrichment Claim in the
            Alternative .................................................................................... 14

    II.    Defendants' Motion to Strike Raises Premature and Meritless Arguments ......... 16

    A.    Legal Standard ....................................................................................... 16

    B.    The Class is Properly Defined and Defendants' Article III Arguments are
        Premature .............................................................................................. 17

C.      Defendants Ignore Allegations Showing the Commonality between
        Plaintiff and the Class Members ............................................................... 18

D.      Defendants Ignore Class Allegations as to Plaintiff's Other Claims ........ 20

CONCLUSION ..................................................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Ashour v. Arizona Beverages USA LLC*,
   2020 WL 5603382 (S.D.N.Y. Sept. 18, 2020)...........................................................21

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*,
   2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) .......................................................15

*Bernstein v. Seeman*,
   601 F. Supp. 2d 555 (S.D.N.Y. 2009) ...................................................................9

*Blue v. Macy's Herald Square*,
   2013 WL 3717777 (S.D.N.Y. July 16, 2013)........................................................10

*Borgese v. Baby Brezza Enterprises LLC*,
   2021 WL 634722 (S.D.N.Y. Feb. 18, 2021)..........................................................20

*Brian Trematore Plumbing & Heating, Inc. v. Walsh Const. Group, LLC*,
   2021 WL 1225950 (S.D.N.Y. Mar. 31, 2021).................................................14, 15

*Contractual Obligation Productions, LLC v. AMC Networks, Inc.*,
   2006 WL 6217754 (S.D.N.Y. Mar. 31, 2006)........................................................8

*Corsello v. Verizon N.Y., Inc.*,
   18 N.Y.3d 777 (2012) ...........................................................................................15

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ..................................................................................17

*Designers North Carpet, Inc. v. Mohawk Industries, Inc.*,
   153 F. Supp. 2d 193 (E.D.N.Y.2001) .....................................................................8

*Diesel Props S.R.L. v. Greystone Business Credit II LLC*,
   631 F.3d 42 (2d Cir. 2011) ....................................................................................13

*Duran v. Henkel of Am., Inc.*,
   450 F. Supp. 3d 337 (S.D.N.Y. 2020) ...................................................3, 16, 17, 18

*Ebin v. Kangadis Food Inc.*,
   297 F.R.D. 561 (S.D.N.Y. 2014) ..........................................................................20

*Garcia v. The ExecuSearch Group, LLC.*,
   2019 WL 689084 (S.D.N.Y. Feb. 19, 2019)........................................................20

*Haley v. Tchrs. Ins. & Annuity Assoc. of Am.*,
   377 F. Supp. 3d 250 (S.D.N.Y. 2019) ..................................................................18

*Haraden Motorcar Corp. v. Bonarrigo*,
   2020 WL 1915125 (N.D.N.Y. Apr. 20, 2020).......................................................15

*Harsco Corp. v. Segui*,
   91 F.3d 337 (2d Cir. 1996) .....................................................................................7

*Hesse v. Godiva Chocolatier, Inc.*,
   463 F. Supp. 3d 453 (S.D.N.Y. 2020) ..................................................................11

*In re U.S. Foodservice Inc. Pricing Litig.*,
   729 F.3d 108, 125 (2d Cir. 2013) ........................................................ 19

*Inter Impex S.A.E. v. Comtrade Corp.*,
   2004 WL 2793213 (S.D.N.Y. Dec. 6, 2004) ........................................ 12

*Ironforge.com v. Paychex, Inc.*,
   747 F.Supp.2d 384 (W.D.N.Y.2010) .................................................... 19

*Johnson v. Carlo Lizza & Sons Paving, Inc.*,
   160 F. Supp. 3d 605 (S.D.N.Y. 2016) .................................................. 15

*Johnson v. Nissan N. Am., Inc.*,
   272 F. Supp. 3d 1168 (N.D. Cal. 2017) ............................................... 13

*Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Insur. Servs.*,
   388 F.Supp.2d 292 (S.D.N.Y.2005) .................................................... 13

*Mandarin Trading Ltd. v. Wildenstein*,
   16 N.Y.3d 173 (2011) ........................................................................... 9

*Marshall v. Hyundai Motor America*,
   51 F.Supp.3d 451 (S.D.N.Y. 2014) ....................................................... 8

*Meisel v. Grunberg*,
   651 F.Supp.2d 98 (S.D.N.Y. 2009) ..................................................... 13

*Poller v. BioScrip, Inc.*,
   974 F. Supp. 2d 204 (S.D.N.Y. 2013) .................................................. 15

*Praxair, Inc. v. Gen. Insulation Co.*,
   611 F. Supp. 2d 318 (W.D.N.Y. 2009) ................................................ 12

*Rhoda v. Rhoda*,
   2017 WL 11530950 (S.D.N.Y. June 22, 2017) ................................... 20

*Specht v. Netscape Commc'ns Corp.*,
   306 F.3d 17 (2d Cir. 2002) .................................................................. 10

*Taboola, Inc. v. Ezoic Inc.*,
   2021 WL 2041639 (S.D.N.Y. May 21, 2021) ....................................... 8

*Unicorn Crowdfunding Inc. v. New St. Enter., Inc.*,
   2019 WL 2450911 (S.D.N.Y. June 12, 2019) ............................... passim

*Wing v. Metro. Life Ins. Co.*,
   2007 WL 9814564 (S.D.N.Y. May 31, 2007) ..................................... 20

*Wojcik v. Empire Forklift, Inc.*,
   14 A.D.3d 63 (3d Dep't 2004) ............................................................ 11

*Zuccarini v. Ziff-Davis Media, Inc.*,
   306 A.D.2d 404 (2d Dep't 2003) ........................................................ 15

**Rules**

FRCP Rule 8 ............................................................................................. 7

iv

FRCP Rule 12 ................................................................................................................... 1

**INTRODUCTION**

Plaintiff Sietel Singh Gill ("Plaintiff") brings this proposed class action against Defendants the National Football League and NFL Enterprises, LLC (collectively, the "NFL" or "Defendants") because the NFL failed to provide uninterrupted live streaming of the February 2, 2020 Super Bowl LIV.  Plaintiff, an Australian citizen—as well as hundreds of thousands of similarly situated individuals located outside of the United States—each paid approximately $200 USD to watch Defendants' football games, including, most critically, livestreaming of the Super Bowl.  Yet, Defendants' live Super Bowl broadcast crashed multiple times during the game, including the last three minutes when the teams were locked in a one-score game.  Thus, despite spending tens of millions of equivalent U.S. dollars to watch the NFL's games live, Plaintiff and the proposed class did not see the most important moment of the biggest game of the football season, a key reason they purchased Game Pass in the first place.

Individuals from across the world expressed their frustration on social media, flooding the NFL with complaints.  Yet the NFL, after initially promising how it would make "amends" for the issue, later offered a meager $10 "partial refund," and only to customers who had specifically complained to the NFL's customer service.  Plaintiff thus brought this suit based on the NFL's failure to provide uninterrupted livestreaming of the Super Bowl and failure to remedy the harm it caused to Plaintiff and the proposed class.  Plaintiff's First Amended Complaint ("FAC") asserts claims for breach of contract, breach of implied warranty of merchantability, and unjust enrichment on behalf of himself and all others similarly situated against Defendants.  ECF No. 23.

Defendants have moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(6), and in the alternative, to strike the class allegations.  ECF No. 25.  Each of Defendants' arguments are based on the mistaken premise that, years after Plaintiff initially contracted with the NFL, two entities

1

supposedly became the counterparties to those who subscribed to Game Pass. *See* Defendants' Memorandum of Law in Support of their Motion ("Mem."), ECF No. 26. At best, Defendants have asserted a potential defense to certain claims, but this is neither a basis for dismissing the claims nor for striking the class allegations. Defendants' arguments therefore fail and their Motion must be denied.

*First*, Plaintiff has adequately alleged the existence of a contract with Defendants. Specifically, Plaintiff alleges that he entered into a contract with Defendants in 2013; that the contract was automatically renewed annually; that payment was made by him in exchange for Defendants' service providing an online platform for digital NFL-related content, including live streaming of NFL games called Game Pass (interchangeably called "Game Pass," "Game Pass Pro" or "Game Pass International"); that Game Pass service included the promise of uninterrupted live streaming; and that the service was governed by the NFL Game Pass Terms and Conditions in existence when Plaintiff first subscribed to the service in 2013. These allegations are sufficiently specific to plead a contract claim.

Defendants' contention that the contract does not exist because Plaintiff actually contracted with third parties is a fact question not suited for the motion to dismiss and is contradicted by the allegations (and factual evidence). In addition, the allegations in the FAC do not contradict the allegations in the original complaint, because in both complaints, Plaintiff alleges that he had a contractual agreement with Defendants covering the 2019–2020 NFL season.

*Second*, Plaintiff has adequately alleged a breach of implied warranty of merchantability claim because the NFL's Super Bowl livestream failed. Defendants do not even challenge the adequacy of these allegations. Instead, they assert there is no privity between the NFL and Plaintiff because of the purported involvement of third parties in providing Game Pass. But Plaintiff

adequately alleged he contracted with the NFL.  And even if Plaintiff had contracted with an entity other than the NFL, Plaintiff has nonetheless alleged privity here:  it is impossible to purchase Game Pass from anyone but the NFL, using the NFL's website.  And Plaintiff has adequately alleged that he is the third-party beneficiary of any contract between the NFL and third parties to provide streaming services.

*Third*, Plaintiff has sufficiently alleged, in the alternative, an unjust enrichment claim. Defendants, once again, do not challenge the adequacy of the allegations supporting this claim. They merely argue that, as a matter of law, Plaintiff cannot plead unjust enrichment in the alternative.  Yet, Defendants completely ignore precedent and this Court's ruling which hold that where there is a dispute to the existence of a contract, a Plaintiff may proceed on both a contract and unjust enrichment theory.  *See Unicorn Crowdfunding Inc. v. New St. Enter., Inc.*, 2019 WL 2450911, at *5 (S.D.N.Y. June 12, 2019) (Engelmayer, J.) ("[W]here … a bona fide dispute exists as to the existence of the contract, the plaintiff may proceed on both breach of contract and quasi-contract theories.").  Here, alternative pleading is appropriate because Defendants vehemently dispute the existence of a contract between them and Plaintiff, and similarly, Plaintiff challenges the existence of a supposed contract with third parties.

Finally, the class is properly defined and Defendants ignore well-plead allegations showing that Plaintiff's relationship with the NFL is similar to that of members of the class.  This Court can therefore easily discard Defendants' request to strike the class allegations as premature and defer resolution of these issues with the benefit of discovery, just as it has done in the past.  *See Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 357 (S.D.N.Y. 2020) (Engelmayer, J.) ("Motions to strike class claims are particularly disfavored.").   Moreover, Defendants' request to strike class

allegations challenges only the viability of the proposed class's contract claim and does not challenge Plaintiff's other claims on behalf of the class.

For these reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss and Motion to Strike.

## FACTUAL BACKGROUND

### A. Defendants' NFL Game Pass

Defendants, through their websites, sell a subscription called Game Pass which is as an online platform for digital NFL-related content, including live streaming of NFL games. FAC ¶ 14. The subscription is available for purchase by customers located outside the United States and its territories, Canada and China. *Id.* at ¶ 6. Customers purchase Game Pass through Defendants' websites by paying a subscription fee to access NFL content, including both livestreams and archived videos, for the United States football season and postseason. *Id.* at ¶ 14–15. Critically, this includes live streaming of the Super Bowl, the pinnacle of the NFL season. *Id.* at ¶ 15.

The most basic and important function of live streaming an NFL game, including the Super Bowl, is providing uninterrupted live streaming for the entire game without outages or other defects. *Id.* at ¶ 16. Defendants offer this service in exchange for payment from its Game Pass subscribers. *Id.* at ¶ 14.

### B. Plaintiff's Subscription to Game Pass

Like other Game Pass customers, Plaintiff purchased Game Pass to watch the Super Bowl live through the Game Pass streaming feature. FAC ¶ 37. In September 2013, Plaintiff contracted with Defendants for the Game Pass service, which was automatically renewed every year. *Id.* at ¶¶ 30, 32-33. New York law governs the contract. *Id.* at ¶ 35.

4

At all times, Plaintiff reasonably believed he was contracting with Defendants. *Id*. at ¶ 31. The confirmation email he received from "nflgamepass" in 2013, which invited him to start watching games at "gamepass.nfl.com," set forth the terms of auto-renewal and provided contact information for cancellation of the subscription and customer support as gamepass.support@nfl.com and http://nfl.com/subscriptionsupport, respectively. *Id*. at ¶ 32. Further, emails from Defendants about Game Pass through 2019 and 2020 came from "NFL Game Pass <noreply@nflgamepass.com>" and continued to highlight the NFL name and logo. *Id*. at ¶ 34. It is impossible to purchase Game Pass from any website other than the NFL's. *See id*. at ¶¶ 49, 53, 55.

Pursuant to his 2013 contract with Defendants, Plaintiff's subscription was automatically renewed and he was charged annually for Game Pass, for which he was notified per emails from "NFL Game Pass." *Id*. at ¶¶ 32-33. The renewal emails indicated that "no action [was] required" to renew Plaintiff's subscription, meaning he did not even need to log into his account or otherwise agree to any update or change in website terms of service each year. *Id*. at ¶¶ 33, 36.

### C.  Live Streaming Fails During the 2020 Super Bowl

Despite the NFL's promises about uninterrupted live streaming, Game Pass subscribers started experiencing streaming issues during the 2020 Super Bowl only a few minutes into the broadcast. *Id*. at ¶ 21. Specifically, the live streaming crashed and displayed an error message. *Id*. While Game Pass's live stream of the Super Bowl eventually resumed, it crashed again during the critical conclusion, including throughout the final three minutes of the game when the San Francisco 49ers and the Kansas City Chiefs were locked in a one-score game. *Id*. at ¶ 22. In response to customers who complained about the interrupted service, Defendants offered the equivalent of $10 USD as a "partial refund" for the interruption, but only to the specific customers who complained. *Id*. at ¶ 26. No other Game Pass customers received a refund. *Id*. at ¶ 28.

Further, this "partial refund" failed to fully account for customers' damages in being deprived of the expected full enjoyment of this non-substitutable good. *Id*. at ¶ 27.

### D. Defendants' Supposed Use of Third Parties Related to Game Pass

Years after Plaintiff contracted with Defendants, Defendants purportedly partnered with Overtier Operations ("Overtier"), a Cayman Islands company, and Deltatre S.P.A. ("Deltatre"), an Italian company, as the licensee and operator of Game Pass, respectively. FAC ¶ 41. Plaintiff, like others, was unaware that Overtier and Deltatre had any involvement in providing Game Pass. *Id*. at ¶¶ 23, 42. In fact, all throughout the nflgamepass.com website, there is no mention of Overtier or Deltatre, except a couple lines of text on a webpage. *Id.* at ¶¶ 43-50. This webpage, also littered with NFL logos and references to Defendants, appears only after the user clicks on "NFL Game Pass Terms & Conditions." *Id*. Other than this text buried in NFL's website, all other references on the nflgamepass.com website are to the NFL, including NFL logos. *Id*. at ¶¶ 43-51.

The website also lacks any hyperlinks redirecting customers away from the www.nfl.com domain and toward these two entities' websites. *Id*. at ¶ 52. The Deltatre website does not contain any information for customers interested in subscribing to Defendants' Game Pass service, and the Overtier website does not mention Game Pass at all. *Id*. at ¶¶ 53, 55.

### ARGUMENT

Defendants' arguments for dismissal are all based on the false and inconsequential premise that, years after Plaintiff initially purchased his automatically renewing Game Pass subscription from the NFL, Plaintiff unwittingly contracted with Deltatre and Overtier in 2019–2020. Whether Defendants ultimately have a viable defense to liability based on an undeveloped record is irrelevant on a motion to dismiss.

As discussed next, Plaintiff has pled his contract claim with sufficient particularity, has adequately alleged privity for his implied warranty claim, and has permissibly pled his unjust

enrichment claim in the alternative.  Plaintiff has also sufficiently alleged a basis to bring this case class-wide.  Accordingly, Defendants' Motion should be denied in its entirety.

## I.   Each of Defendants' Arguments for Dismissal Fails

### A.  Legal Standard

"In considering a motion to dismiss, a district court must accept as true all well-pled factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor." *Unicorn Crowdfunding Inc. v. New St. Enter., Inc.*, 2019 WL 2450911, at *3 (S.D.N.Y. June 12, 2019) (Engelmayer, J.) (citing *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014)).  A complaint need only plead "enough facts to state a claim to relief that is plausible on its face," and plausibility exists where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### B.  Plaintiff Adequately Alleges Breach of Contract

#### 1.   The FAC Contains Sufficient Factual Allegations to Support the Existence of a Contract with the NFL

To state a claim for breach of contract, "a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).  Here, Plaintiff has alleged sufficient facts under Rule 8 to allege breach of a contract.

Plaintiff "plausibly alleges an overall course of dealings sufficient to evince the terms on which the parties agreed." *Unicorn Crowdfunding*, 2019 WL 2450911, at *4.   He alleges that NFL Game Pass Terms and Conditions from 2013 govern the Game Pass subscription.  *See* FAC at ¶¶ 17, 30, 33, 35.  He further alleges that Defendants, through their websites, provide the Game

Pass subscription and access to NFL content, including both livestreams and archived videos of regular and postseason games (*id.* at ¶ 14); that an important function of live streaming an NFL game is providing uninterrupted live streaming for the entire game without outages or other defects (*id*. at ¶ 16); and that Defendants provided this service in exchange for payment from its Game Pass subscribers (*id*. at ¶ 14).  Defendants also extensively promoted and advertised the livestream of the Super Bowl to sell Game Pass internationally. *Id.* at ¶ 15.

Because of the alleged "overall course of dealings," *Unicorn Crowdfunding*, 2019 WL 2450911, at *3, Defendants' argument that Plaintiff fails to identify the specific terms of the alleged agreement—"either by express reference or attaching a copy of the contract"—fails.  Mem. at 9; *see Taboola, Inc. v. Ezoic Inc.*, 2021 WL 2041639, at *12 (S.D.N.Y. May 21, 2021) (Engelmayer, J.) ("That the FAC d[oes] not attach a copy of the contract . . . d[oes] not mean that the FAC ha[s] not stated a claim."); *see also Unicorn Crowdfunding*, 2019 WL 2450911, at *3; *Contractual Obligation Productions, LLC v. AMC Networks, Inc*., 2006 WL 6217754, at *6 (S.D.N.Y. Mar. 31, 2006) (deeming allegations that defendant "agreed" or "promised" to do various things, plaintiff performed as required, defendant breached its promises and agreements, and that plaintiff was harmed as a result, was sufficient to state a claim for breach of contract); *see also Designers North Carpet, Inc. v. Mohawk Industries, Inc.*, 153 F. Supp. 2d 193, 197 (E.D.N.Y.2001) (denying a motion to dismiss a breach of contract claim where the plaintiff provided a "short and plain statement" of the existence of certain agreements) (citing *Bridgeway Corp. v. Citibank, N.A.,* 132 F. Supp. 2d 297, 304 (S.D.N.Y. 2001)).[1]  This should hold especially true in cases involving one-sided online adhesion contracts, such as the agreement at issue.

---

[1] Defendants cite inapposite authority where no specific agreement was identified or the allegations did not identify the parties or basis for the agreement.  *See* Mem. at 11; *Marshall v. Hyundai Motor America*, 51 F.Supp.3d 451, 468 (S.D.N.Y. 2014) (plaintiffs' allegations that they entered into "certain contracts and warranty agreements with Hyundai" were too vague establish the existence of a contract); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d

### 2.   Defendants' Contention that Plaintiff Instead Contracted with Third Parties is Incorrect and is Improperly Raised on a Motion to Dismiss

Defendants also argue that the contract claim fails because "the contractual terms which *do* apply to Plaintiff's subscription for the 2019–2020 season and which confirm *Deltatre and Overtier* provided Plaintiff with live-streaming of the 2020 Super Bowl, *not Defendants*." Mem. at 12 (emphasis in original).  In effect, Defendants, are improperly asking this Court to assess facts that contradict the well-pled allegations, which must be accepted as true in resolving the motion to dismiss.  *See, e.g., Bernstein v. Seeman*, 601 F. Supp. 2d 555, 556 (S.D.N.Y. 2009) ("[A] motion to dismiss is not the proper stage at which to resolve factual disputes.").

Highlighting that this argument is better suited after discovery, Defendants rely on an incomplete record: they attached to their Motion *only* the 2019–2020 terms and conditions, even though: (1) Plaintiff's relationship with Defendants dates back to 2013, (2) each year his Game Pass subscription was automatically renewed without any action by Plaintiff, and (3) Defendants *never* provided any notice that Plaintiff was agreeing to new terms and conditions.  FAC ¶¶ 33, 36.  And, notably, despite Defendants' willingness to improperly inject factual challenges into a motion to dismiss, they provide nothing to suggest that Plaintiff ever had notice, let alone acquiesced to these updated terms and conditions.

Indeed, the lack of notice is fatal to Defendants' argument.  Plaintiff alleges that "[he] never received any notification that he needed to agree to any updated or change in website terms or contracting parties each year his subscription to Game Pass was automatically renewed."  *Id.* at ¶ 36.  Accordingly, he "was unaware that Overtier and Deltatre had any involvement in providing Game Pass." *Id.* at ¶ 42.  Plaintiff's allegations, therefore, defeat the notion that he ever contracted

---

173, 181-82 (2011) (plaintiffs failed to plead the parties to an appraisal contract and the conditions under which the contract was formed).

with Deltatre or Overtier based on the updated terms and conditions of which he was not "on inquiry or constructive notice." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 32 (2d Cir. 2002) ("Mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract."); *cf. Unicorn Crowdfunding*, 2019 WL 2450911, at *3 ("'A party's conduct indicates assent [to a contract] when he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.'") (alteration and citation omitted).[2]

### 3. Nothing in the FAC Contradicts the Original Complaint

Lastly, Defendants accuse the FAC of "blatantly chang[ing]" and "directly contradict[ing]" the contract allegations from the original complaint. Mem. at 8, 10. But the FAC simply clarified that Plaintiff originally subscribed to Game Pass in 2013, and that since then, his subscription purchase was automatically renewed each year, including 2019. *See* FAC ¶¶ 30, 33. In short, the FAC does not contradict the original complaint; rather it only provides additional facts.

Moreover, consistent with the original complaint, the FAC alleges that others also viewed the 2020 Super Bowl via automatic renewal of their subscription:

> NFL Gamepass crashes on super bowl night … Beyond ridiculous, I have no doubt I'm one of the many idiots, that have not bothered their asses, over the years , to unsubscribe! Well guess what my main mission is tomorrow! #nfl #NFLGamePass.

FAC ¶ 23; *see* ECF No. 1 at ¶ 23.

---

[2] While Plaintiff believes this Court should reject Defendants' contract argument out of hand, to the extent the Court wishes to reach the contract claim now, Plaintiff respectfully requests conversion of this motion to one for summary judgment pursuant to Rule 12(d), grant discovery, and stay further briefing until the record develops. *See, e.g., Blue v. Macy's Herald Square*, 2013 WL 3717777, at *4 (S.D.N.Y. July 16, 2013) (Engelmayer, J.) (quoting *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) ("[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.") (alteration in original)).

Plaintiff further provided a screenshot of the original confirmation email he received in 2013 when he first purchased the Game Pass subscription. *See id.* at ¶ 32. Therefore, this is not a situation in which a party is creating sham allegations to get around a motion to dismiss. Instead, Plaintiff is providing additional true facts to support his claims.

Accordingly, Defendants' Motion as to the breach of contract claim should be denied.

## C. Plaintiff Has Sufficiently Alleged Privity to Support His Implied Warranty of Merchantability Claim

Plaintiff has adequately alleged his claim for breach of implied warranty of merchantability. A good is not merchantable where it "was not 'reasonably fit for [its] intended purpose,'" which is "an inquiry that 'focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners." *Wojcik v. Empire Forklift, Inc.*, 14 A.D.3d 63, 66 (3d Dep't 2004) (citations omitted). The FAC alleges that Defendants impliedly warranted that the live streaming of the Super Bowl would not be defective and would not fail during critical moments of the game. *See, e.g.,* FAC ¶¶ 80-88. It further alleges that Plaintiff and consumers would not have purchased Game Pass or have spent as much money if they knew the product was defective. *See id.*

Defendants do not dispute the adequacy of Plaintiff's allegations. They instead assert only lack of privity, repackaging their factually incorrect and procedurally improper argument that there is no contract between Plaintiff and Defendants. Mem. at 12-13. As discussed above, Plaintiff has sufficiently alleged the existence of a contract between himself and Defendants.

Moreover, even if third parties Deltatre and Overtier were technically the contract counterparties, Plaintiff *still* has alleged privity as every part of the transaction was made with the NFL directly. *Cf. Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 470 (S.D.N.Y. 2020) (privity for implied warranty claim under New York law adequately alleged where plaintiff and

the proposed class "purchased [defendant's] products directly from [defendant's] physical store locations *or from its website*") (emphasis added).

Plaintiff alleges he originally subscribed to Game Pass directly from the NFL and his subscription was automatically renewed.  FAC ¶ 36.  NFL Game Pass can only be purchased through the NFL's website (*id.* at ¶¶ 49, 53, 55); Overtier and Deltatre do not independently provide the Game Pass service and one cannot subscribe to that service through Overtier or Deltatre's own websites.  *See* FAC ¶¶ 53, 55.  Nor does the NFL Game Pass website redirect consumers to Deltatre and/or Overtier's websites to complete the NFL Game Pass subscription purchase.  *See id.* at ¶ 52.  Further, confirmation emails for the purchase of the NFL Game Pass subscription are not from Overtier or Deltatre, but are from "NFL Game Pass" with an email address of "info@service.nflgamepass.com."  *See id.* at ¶ 34.  These allegations more than suffice to allege privity between Plaintiff and the NFL.[3]

Furthermore, the FAC contains specific factual allegations to show that Plaintiff was the intended third-party beneficiary of any contract between Defendants, Deltatre, and Overtier, to provide live streaming of the Super Bowl.  *See, e.g.*, *Praxair, Inc. v. Gen. Insulation Co.*, 611 F. Supp. 2d 318, 330–31 (W.D.N.Y. 2009) (allegations that plaintiff was a third-party beneficiary of a distribution agreement sufficed to establish privity).  Defendants' websites provide access to Game Pass's content, including the livestream of the Super Bowl.  FAC ¶ 14.  In the only place that mentions these third parties on the NFL's website, Defendants describe Overtier as the "official licensee of the content material" and Deltatre as the "operat[or] [of] the platform" and to whom customer queries are to be addressed.  *Id.* at ¶ 50.  In other words, these third parties play a

---

[3] Defendants' cases are inapposite as the complaints there lacked "*any* allegations of privity."  *See, e.g., Inter Impex S.A.E. v. Comtrade Corp.*, 2004 WL 2793213, at *5 (S.D.N.Y. Dec. 6, 2004) (emphasis added) (cited in Mem. at 12).

minor role, in which their only purported function is to assist international customers in accessing live streams of Defendants' content.  That suffices to allege privity here.[4]

Finally, that Plaintiff does not "cite specific provisions from the alleged contracts between [the NFL] and [Deltatre or Overtier]" does not change the privity analysis because "it would be inappropriate to impose such a duty at the pleadings stage, prior to the benefit of discovery." *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1181-82 (N.D. Cal. 2017) (plaintiff adequately alleged privity to state implied warranty claim under New York law) (citing *Praxair*, 611 F. Supp. D at 330-31).  Plaintiff has therefore adequately alleged his breach of implied warranty claim.

### D. Plaintiff's Unjust Enrichment Claim Is Viable and May be Pled in the Alternative

#### 1. Plaintiff Has Pled a Viable Unjust Enrichment Claim

 "In order to succeed on a claim for unjust enrichment under New York law, a plaintiff must prove that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Diesel Props S.R.L. v. Greystone Business Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011).

Here, Plaintiff alleges, in the alternative to his breach of contract claim, that Defendants were unjustly enriched by retaining revenues from Plaintiff and the proposed class's purchases of Game Pass where the live stream failed during key moments of the Super Bowl, even though Plaintiff, like other Game Pass customers, purchased Defendants' product because he wanted to watch the Super Bowl live.  FAC ¶¶ 37-40, 89-95; *see, e.g., id*. at ¶ 23 ("Gamepass International

---

[4]  For these same reasons, contrary to Defendants' arguments, Mem. at 14-16, Plaintiff has plausibly alleged an agency relationship between Overtier, Deltatre, and the NFL.  *See Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Insur. Servs.*, 388 F.Supp.2d 292, 301 (S.D.N.Y.2005) (citing *In re Shulman Transport Enter., Inc.*, 744 F.2d 293, 295 (2d Cir.1984)) ("Essential to the agency relationship is the notion that the agent acts subject to the principal's direction and control."). On a motion to dismiss, the relevant inquiry is "whether plaintiff has made specific allegations from which an agency relationship can be inferred." *Meisel v. Grunberg*, 651 F.Supp.2d 98, 111 (S.D.N.Y. 2009) (emphasis added).  Agency suffices to meet the privity requirement here.

is not working! 200 dollars and you guys screw up during the final game! An absolute joke! I will not be subscribing to your crappy service anymore! Compensation is a must for all of your paying customers! @NFL Stop sh[***]ing on your fans #rookiemistake."); *Id.* at ¶ 39 ("Plaintiff . . . experienced the outages described herein and, extremely disappointed and frustrated, was unable to livestream the entire game as anticipated.").  It is particularly against equity and good conscience to allow Defendants to retain the benefits of tens of millions in subscription fees when they have sought to shield themselves from liability by burying a couple sentences regarding third parties in a website littered with NFL Logos and never notifying Plaintiff or others about these supposed new Game Pass providers.  *See, e.g.*, *id.* ¶¶ 30-37.

### 2. Plaintiff May Bring His Unjust Enrichment Claim in the Alternative

Given Plaintiff's strong allegations, it is no surprise that Defendants do not argue that Plaintiff has not sufficiently plead the elements of unjust enrichment.  Instead, the only argument they can muster is that because Plaintiff brings a contract claim, "[a]n unjust enrichment claim is not available . . . even if pled in the alternative."  Mem. at 13-14.  Defendants are wrong.

As this Court has held, "'where … a bona fide dispute exists as to the existence of the contract, the plaintiff may proceed on both breach of contract and quasi-contract theories." *Unicorn Crowdfunding*, 2019 WL 2450911, at *5 (alteration and citation omitted).  This is because "a contrary holding would breach Fed. R. Civ. Pro. 8(d), which provides: 'A party may set out 2 or more statements of a claim or defense alternatively or hypothetically . . . A party may state as many separate claims or defenses as it has, regardless of consistency.'" *Id.*  (first alteration and citation omitted); *see also, e.g., Brian Trematore Plumbing & Heating, Inc. v. Walsh Const. Group, LLC*, 2021 WL 1225950, at *5 (S.D.N.Y. Mar. 31, 2021) ("'Where there is a bona fide dispute as to [1] whether a relevant contract exists or [2] covers the disputed issue . . . courts have permitted plaintiffs to pursue both unjust enrichment and breach of contract claims.'") (quoting *Marshall v.*

14

*Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471–72 (S.D.N.Y. 2014)); *Johnson v. Carlo Lizza &*
*Sons Paving, Inc.*, 160 F. Supp. 3d 605, 617 (S.D.N.Y. 2016) (citing *Mitchell v. Faulkner*, 531 F.
App'x. 136, 137 (2d Cir. 2013) (summary order) ("Such an alternative pleading is permissible
under New York law.")); *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 236 (S.D.N.Y. 2013);
*Zuccarini v. Ziff-Davis Media, Inc.*, 306 A.D.2d 404, 405 (2d Dep't 2003).

Here, there is a bona fide dispute as to whether a contract exists that covers this dispute.
Defendants vehemently deny the existence of a contract Plaintiff asserts exists (between him and
the NFL), and Plaintiff denies the existence of a contract Defendants assert exist (between Plaintiff,
Deltatre, and Overtier).  *See, e.g.,* FAC ¶ ¶ 17, 30, 33, 35-36, 41.  As such, Plaintiff may plead
unjust enrichment in the alternative. *See Brian Trematore*, 2021 WL 1225950, at *5 ("'In such
circumstances, courts regularly allow plaintiffs 'to plead both contract and quasi-contract claims
in the alternative.'") (quoting *Beach v. Touradji Cap. Mgmt. L.P.*, 927 N.Y.S.2d 41, 42 (App. Div.
2011)).  Accordingly, "[d]iscovery and, if needed, trial will elucidate which, if any, of these claims
has merit." *Unicorn Crowdfunding*, 2019 WL 2450911, at *5.[5]

For these reasons, Defendants' Motion should be denied as to Plaintiff's unjust enrichment
claim.

---

[5] Defendants fail to recognize the large-body of case law, including a decision from this Court, which allows
alternative pleading in this circumstance.  Instead, they cite inapposite authorities where there was no dispute as to
the existence of the contracts at issue or whether the contract terms governed the disputed issues.  *See* Mem. at 13-
14 (citing, *inter alia*, *Network Enters., Inc. v. Reality Racing, Inc*., at *7 (S.D.N.Y. Aug. 24, 2010) (unjust
enrichment claim partly based on administrative fees paid by Citibank governed by Administrative Agreements i.e.
contracts whose validity were not disputed); *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A*., 2003 WL
23018888, at *17 (S.D.N.Y. Dec. 22, 2003), *aff'd*, 110 F. App'x 191 (2d Cir. 2004) (unjust enrichment claim based
on company's failure to make payments to stockholders under an Agreement of which the parties did not dispute its
validity or whether the Agreement's terms governed the disputed issue); *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d
777, 790 (2012)); *see also Haraden Motorcar Corp. v. Bonarrigo*, 2020 WL 1915125, at *10 (N.D.N.Y. Apr. 20,
2020) (explaining that unlike "binary situation" presented in *Corsello* plaintiff could plead unjust enrichment in the
alternative because "Plaintiff's other claims could fail while Plaintiff still recovers for unjust enrichment").

## II. Defendants' Motion to Strike Raises Premature and Meritless Arguments

The FAC abounds with sufficient factual allegations to allow this case to proceed class-wide. *See, e.g.,* FAC ¶ 37 ("Like other Game Pass customers, Plaintiff purchased Game Pass to watch the Super Bowl live through the Game Pass live-streaming feature."); *id.* at ¶ 65 (summarizing a non-exhaustive list of common questions of law and fact). This Court should therefore reject Defendants' request to strike class allegations based on their speculative, premature Article III standing challenges and incorrect assertions that Plaintiff's experience subscribing to Game Pass was unique. Mem. at 17-19. Moreover, Defendants do not even address the FAC's class allegations as to the implied warranty and unjust enrichment claims, which have been adequately plead.

### A. Legal Standard

A motion to strike class allegations "may be entertained [only] if the inquiry would not mirror the class certification inquiry *and* if the resolution of the motion is clear.'" *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 357 (S.D.N.Y. 2020) (Engelmayer, J.) (emphasis added) (quoting *Talarico v. Port Auth. of N.Y. & N.J.*, 367 F. Supp. 161, 172 (S.D.N.Y. 2019)).

Motions to strike under Rule 12(f) are disfavored and "[m]otions to strike class claims are particularly disfavored." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 357 (S.D.N.Y. 2020) (Engelmayer, J.) (alteration omitted) (quoting *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013). This is because such motions "'require[ ] a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.'" *Id.* (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012)). Courts therefore "generally defer such

16

questions to the class certification stage, when the court has a fuller factual record." *Id.* (citing *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 573 (S.D.N.Y. 2012)).

### B.   The Class is Properly Defined and Defendants' Article III Arguments are Premature

The FAC defines the class as "[a]ll persons who subscribed to Game Pass and whose subscription included the 2019 to 2020 NFL season." FAC ¶ 60.[6]   Defendants make much out of the FAC's removal of an express reference to purchasing Game Pass from Defendants in the class definition, claiming that Plaintiff did so because "unrelated third parties" provided Game Pass. Mem. at 17.   But the FAC merely conforms its class definition to encompass the implied warranty and unjust enrichment claims, which may proceed on a class basis regardless of the contract claim.

Defendants also falsely assert that "the class must be defined in such a way that all of its members have Article III standing" because the class definition "contains potentially hundreds of thousands of individuals who have no contractual relationship with Defendants."   Mem. at 17. Defendants, once again, are prematurely claiming victory based on a potential defense to the contract claim, this time repackaged as a standing challenge.

"A court may defer analyzing the standing of class members other than named plaintiffs until 'after class certification where certification issues are 'logically antecedent' to Article III concerns.'" *Duran*, 450 F. Supp. 3d at 357 (quoting *Kassman*, 925 F. Supp. 2d at 461)).   And Defendants' own authority belies the notion that this Article III standing inquiry would present a difficult hurdle.  *See Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) (cited in Mem. at 17) ("We do not require that each member of a class submit evidence of personal standing.").   At class certification, with the benefit of discovery, this Court will determine the "logically

---

[6] Excluded from the Class are Defendants and their officers and directors at all relevant times, members of Defendants' immediate families and their legal representatives, heirs, successors, and assigns, and any entity in which the Defendants have or had a controlling interest.  FAC ¶ 60.

antecedent" issue of whether common issues of law and fact predominate with respect to Plaintiff's contract claim, including how class members generally subscribed to Game Pass. This inquiry would inform the existence of any standing issues. *Cf. Haley v. Tchrs. Ins. & Annuity Assoc. of Am.*, 377 F. Supp. 3d 250, 273 (S.D.N.Y. 2019) ("Such arguments . . . 'rely upon the [Rule 23] factors that would be analyzed and addressed by this Court in the course of deciding a motion for class [certification].'") (citation omitted).

Accordingly, any Article III "analysis is properly deferred here." *Duran*, 450 F. Supp. 3d at 357.

## C. Defendants Ignore Allegations Showing the Commonality between Plaintiff and the Class Members

Defendants' next argument—that "Plaintiff [now] alleges a highly individualized series of events . . . to support a supposed contract between himself and Defendants"—ignores ample allegations that show that Plaintiff's experience with the NFL is not unique. Mem. at 18. As explained in § I.A above, Plaintiff contracted with the NFL, his subscription was automatically renewed, the NFL never notified him that Deltatre and Overtier became involved in Game Pass, and Plaintiff always reasonably believed he was contracting with the NFL. The FAC makes clear that his experience was similar to that of class members, which is akin to numerous other class actions involving relatively low-value, defective consumer goods and services.

Specifically, in addition to Defendants' common representations to the public and common sense regarding the streaming services at issue, customer complaints show that potential class members, like Plaintiff, (1) believed the NFL was responsible for Game Pass and the defect, even "tagging" the NFL on social media, (2) viewed the 2020 Super Bowl via an automatically renewed subscription with the NFL, and (3) were motivated to purchase Game Pass because of live streams of the Super Bowl. For instance:

- @NFL What's happening with Game Pass in Sydney, Australia? Pretty unfortunate to pay for the service but not have it work on the Super Bowl #nflgamepass

- Wtf @nfl how can gamepass be down during the super bowl? #bebetter

- NFL Gamepass crashes on super bowl night ... Beyond ridiculous, I have no doubt *I'm one of the many idiots, that have not bothered their asses, over the years, to unsubscribe*! Well guess what my main mission is tomorrow! #nfl #NFLGamePass.

- Gamepass International is not working! 200 dollars and you guys screw up during the final game! An absolute joke! *I will not be subscribing to your crappy service anymore*! Compensation is a must for all of your paying customers! @NFL Stop sh[***]ing on your fans #rookiemistake

FAC ¶ 23 (emphasis added); *see also id.* at ¶¶ 24-29.   Accordingly, Plaintiff has more than adequately alleged a basis to bring a contract-claim class wide.  *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 125 (2d Cir. 2013) (class certification was appropriate because "plaintiffs' contract claims will focus predominantly on common evidence").

In addition, Plaintiff alleges that New York law governs the applicable contract.  Therefore, this Court can easily reject Defendants' suggestion that, eventually, unspecified multi-jurisdictional laws and unidentified contract variations might preclude class certification.  *See* Mem. at 17-18; *Foodservice Pricing*, 729 F.3d at 126 (affirming class certification even where individual contracts varied and "implicate[d] the laws of many jurisdictions").   Moreover, Defendants point to no material differences in law nor in the unspecified contracts that might apply to various class members.  *See id.* (noting that certification has been denied in contract claims where "courts have determined that the language variations were *material to the issue of breach*") (emphasis added).[7]

---

[7] To the extent that at some point the terms and conditions required a different venue and choice of law for consumers, which could potentially limit the class size, that would be an issue that would be best determined during the class certification stage after necessary discovery has been completed.  *Ironforge.com v. Paychex, Inc.*, 747 F.Supp.2d 384, 404 (W.D.N.Y. 2010).  Regardless, limiting the class size would not be a basis to deny class certification.

Once again, Defendants' underdeveloped speculation about potential individualized issues underscores that their arguments should be dealt with later in this litigation (particularly given the lack of merit to the defenses).  Even Defendants' authority agrees.  *See Garcia v. The ExecuSearch Group, LLC.*, 2019 WL 689084, at *4 (S.D.N.Y. Feb. 19, 2019) (cited in Mem. at 18-19) ("[Defendant]'s motion to strike based on the failure to satisfy Rule 23(a)'s prerequisites is procedurally premature and denied without prejudice to opposing class certification on these grounds with the benefit of a complete factual record.").[8]

**D. Defendants Ignore Class Allegations as to Plaintiff's Other Claims**

Finally, Defendants have not moved to strike the class allegations as to the breach of implied warranty of merchantability or unjust enrichment claims.  Nor could they.

Both claims are governed by New York law and implicate common evidence, including, among others, the provision and marketing of Game Pass, its defective condition, and how Defendants benefited thereby.  *See, e.g.,* FAC ¶ 65 (summarizing issues common to the class); *Rhoda v. Rhoda*, 2017 WL 11530950, at *32 (S.D.N.Y. June 22, 2017) (explaining that under New York's conflict of law rules, "the law governing a claim for restitution to recover for unjust enrichment is that of the state which, with respect to each issue, 'has the most significant relationship to the occurrence and the parties'") (emphasis added); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 569 (S.D.N.Y. 2014) (certifying class as to claim of implied warranty of merchantability because "the same evidence will be used to determine" whether members "recei[ved] an inferior product").  Even if multiple jurisdictions' laws applied to these claims, it

---

[8] Defendants' other authorities are easily distinguishable because of the highly individualized nature of the claims in those cases, including personal injuries, oral misrepresentations or parole evidence that differed by class member, and involved multijurisdictional legal issues that are not present here, or were decided on class certification.  *See* Mem. at 18-19 (citing, *inter alia*, *Davis v. Navient Corporation*, 2018 WL 1603871, at *4 (W.D.N.Y. Mar. 12, 2018); *Borgese v. Baby Brezza Enterprises LLC*, 2021 WL 634722 (S.D.N.Y. Feb. 18, 2021); *Wing v. Metro. Life Ins. Co.*, 2007 WL 9814564, at *9 (S.D.N.Y. May 31, 2007)).

would be premature to prevent Plaintiff from developing the record to support class certification. *Cf. Ashour v. Arizona Beverages USA LLC*, 2020 WL 5603382, at *6 (S.D.N.Y. Sept. 18, 2020) ("Although unjust enrichment laws vary between states, 'rejection of nationwide unjust-enrichment classes is not a universal rule.'") (quoting *Hanks v. Lincoln Life & Annuity Co. of New York*, 330 F.R.D. 374, 385 (S.D.N.Y. 2019)).

In sum, Plaintiff's motion to strike the class allegations should be denied.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion in its entirety. Plaintiff further requests that this matter be heard before the Court by oral argument.

Respectfully Submitted,                          **KRONENBERGER ROSENFELD, LLP**

Dated: June 17, 2021                             _____/s/ Karl S. Kronenberger_____
                                                 Karl S. Kronenberger
                                                 150 Post Street, Suite 520
                                                 San Francisco, CA 94108
                                                 Telephone: (415) 955-1155
                                                 Facsimile: (415) 955-1158
                                                 karl@KRInternetLaw.com


                                                 **ROME & ASSOCIATES, A.P.C.**

                                                 _____/s/ Eugene Rome_____
                                                 Eugene Rome (*pro hac vice forthcoming*)
                                                 2029 Century Park East, Suite 450
                                                 Los Angeles, CA 90067
                                                 Telephone: (310) 282-0690
                                                 Facsimile: (310) 282-0691
                                                 eugene@romeandassociates.com

                                                 **POLLOCK COHEN LLP**

                                                 _____/s/ Raphael Janove_____
                                                 Adam Pollock
                                                 Christopher K. Leung

Raphael Janove
60 Broad St., 24th Fl.
New York, NY 10004
Telephone: (212) 337-5361
adam@pollockcohen.com
cleung@pollockcohen.com
rafi@pollockcohen.com

*Attorneys for Plaintiff Sietel Singh Gill
and the Proposed Class*