## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SIETEL SINGH GILL, individually and on behalf
of other similarly situated individuals,

<div style="margin-left:2em">Plaintiffs,</div>

v.

NATIONAL FOOTBALL LEAGUE, and NFL
ENTERPRISES LLC,

<div style="margin-left:2em">Defendants.</div>

Case No. 1:21-cv-01032-PAE

**AFFIDAVIT OF RICHARD JOHNSTON**

RICHARD JOHNSTON being duly sworn, deposes and states:

I have personal, first-hand knowledge of the facts and circumstances set forth in this affidavit.

1.    I am the Chief Finance Officer at OverTier Operations and have held this position since August 2017.

2.    OverTier Operations has been and remains the official licensee of the content material provided through the NFL Game Pass International service since 2017 for the European markets, and since 2019 for non-European markets, including Australia.

3.    As the Chief Finance Officer, I am personally familiar with the records of OverTier Operations relative to the NFL Game Pass International service, including those records relating to subscriber accounts.

4.   I am the duly authorized custodian or other qualified witness of the records of OverTier Operations and have the authority to make this Declaration.

5.   To the best of my knowledge, after reasonable inquiry, the records or copies referenced herein or attached hereto are accurate versions of records that have remained within the possession, custody, or control of OverTier Operations.

6.   The records or copies provided by OverTier Operations to counsel for the NFL and NFLE and produced as DEF00000013-DEF0000029, DEF0000156-DEF0000180, DEF0000224-DEF0001019, DEF0001044-DEF0001249, DEF0001395, and DEF0001521-DEF0001537 were made by the personnel or staff of OverTier Operations, or by persons acting under its direction or control, in the regular course of business, at the time of the act, transaction, occurrence or event recorded therein, or within a reasonable time thereafter, and that it was in the regular course of business of OverTier Operations to make such records.

7.   OverTier Operations, or persons acting under its direction or control, regularly communicate with all Game Pass International subscribers through its marketing emails, advertising events throughout the season, and its service emails, informing subscribers of new services, updates and changes to subscription Terms and Conditions, upcoming season renewal notifications, payment confirmations, and other account related communications.

8.   The marketing and service email communications sent by OverTier Operations, or persons acting under its control, are tracked, at the direction of OverTier Operations, by Two

Circles, a sports marketing agency, who utilize widely recognized email campaign management and tracking software provided by a third party, Dotdigital, that triggers email campaigns, monitors and collects data on emails that are sent to and received by specific user email addresses. The software tracks, among other things, a web-address copy of the email sent, when the email was sent, when the email was first opened, when the email was last opened, and how many times the email was opened. Emails are sent to the email address provided by each NFL Game Pass International subscriber that is linked to the subscriber's account. Information is tracked in real time as recipients interact with the emails that are sent and recorded in the Dotdigital platform. On behalf of OverTier Operations, as part of its regular course of business, Two Circles maintain records of every email campaign sent to all Game Pass International subscribers in a Two Circles data warehouse.

9. The data relating to email campaigns collected by Two Circles, at the direction of OverTier Operations, can be exported into an excel spreadsheet for any specific user, identified by an email address, to review the up-to-date log at the time it was exported.

10. The account I.D. "sietelgill" was linked to the email address provided by Plaintiff, Sietel Singh, for use with Gill's NFL Game Pass International subscription with Overtier/Deltatre throughout the 2019 Season.

11. At the request of OverTier Operations and to provide the NFL with information requested from the Plaintiff in this case, Two Circles exported from its data warehouse, all the marketing and service emails sent to the email address associated to the sietelgill account between June 19, 2019, and December 2, 2021, into an excel spreadsheet. The data

included web-address copies of the emails sent to the email address associated to the sietelgill account, when each email was sent, when each email was first opened, when each email was last opened, how many times each email was opened, and a number of other columns of data collected. A produced copy of the spreadsheet has been identified as DEF0001395. This document was prepared by Two Circles on behalf of OverTier Operations to reflect the information contained therein from the records maintained by Two Circles at the direction of OverTier Operations in its regular course of business. All the information contained on this sheet was contemporaneously recorded within the business records of Dotdigital at the time each email was sent to the subscribers. Two Circles, acting on behalf of, and at the direction and control of, OverTier Operations, received daily updates of this information from Dotdigital into Two Circles' data warehouse and maintained this information for access when required and has been so maintained by Two Circles.

12.   The column labeled "Email" within the document identified as DEF0001395 contains a link to a copy of an email that was sent from OverTier Operations to the email address associated with the account. Copies of all the emails have been produced and are identified as DEF0000224-DEF0001019.

13.   The column labeled "DateSent" within the document identified as DEF0001395 indicates the date and time a copy of the email contained in the same row was sent to the email address associated with the account.

14.   The column labeled "DateFirstOpened" within the document identified as DEF0001395 indicates the date and time that the email was first opened by the recipient email associated with the account.

15.   The column labeled "DateLastOpened" within the document identified as DEF0001395 indicates the date and time that the email was last opened by the recipient email associated with the account.

16.   The column labeled "NumOpens" within the document identified as DEF0001395 indicates the number of times that the corresponding email within the same row was opened by the recipient email associated with the account.

17.   Each Australian NFL Game Pass International subscriber with an active subscription at the date the email was sent received the service emails found in the excel spreadsheet identified as DEF0001395. The referenced excel spreadsheet is in connection with only Plaintiff's specific account.

18.   One of the emails identified on DEF0001395 and sent by OverTier Operations to NFL Game Pass International subscribers in Australia on June 19, 2019, notifying subscribers of changes to their Game Pass subscription is the email, identified as DEF0000231-DEF0000232, and a copy is attached hereto.  This email is shown on DEF0001395 as having been sent to the sietelgill account and was opened twice on the same day it was received, first at 11:45 a.m. and subsequently at 12:29 p.m. The email informed subscribers that NFL Game Pass was updating its service provider and would have a "new home" for

subscribers to watch games and interact with the Game Pass service. The email contained a hyperlink attached to the URL "nflgamepass.com" text which, when clicked, redirected users to the Game Pass website. The same email contained an "Updated Apps" section that informed subscribers of the new mobile NFL Game Pass International application, published by Deltatre S.p.A., that was available for immediate download, and of similar new NFL Game Pass International applications that would be available to download on a variety of other platforms, starting July 1, 2019. The email continued, notifying subscribers that on July 25, 2019, the old "existing app(s)" would no longer be in operation, so access to the NFL Game Pass International service would be unavailable through the old apps without updating to the new NFL Game Pass International applications. The email concluded with step-by-step instructions on how subscribers could download and access the new NFL Game Pass International applications.

19.    On July 1, 2019, OverTier Operations sent an additional email to NFL Game Pass Australian subscribers, reminding them that the service provider was changing. A copy of the email, identified as DEF0000990-DEF0000991, was sent to the sietelgill account, and was opened at 2:42 p.m. the same day it was received. In addition to reminding subscribers that the service provider was changing, the email notified recipients that their accounts were upgraded to the Season Pro package at the same price as the 2018 Season Plus price. The email continued and informed the recipient that his account was set to auto-renew his NFL Game Pass subscription on August 1, 2019. Under the heading "**What do you need to do?**" OverTier Operations informed subscribers that if they wished to cancel their subscription, they had to do so by clicking on a hyperlink that was included in the email.

If subscribers decided not to opt out of the automatic renewal, a new contract would be entered between the subscriber and OverTier Operations and Deltatre S.p.A. upon payment and use of the Game Pass International subscription. The email provided a section titled "How to Update Your Apps" that contained a hyperlink to instructions on how subscribers could obtain the new NFL Game Pass International application. Finally, the email included OverTier Operations' name and post office box information.

20. On July 16, 2019, OverTier Operations sent an email to NFL Game Pass International subscribers in Australia reminding subscribers to update their NFL Game Pass application prior to July 25, 2019, in order to continue using the service under the new provider. A copy of the email was sent to the sietelgill account, identified as DEF0001006-DEF0001007, and was opened twice. The email was first opened at 11:46 a.m. on the day it was received, and was opened again at 12:02 a.m. the following day, July 17, 2019. The body of the email also contained step-by-step instructions showing users how to obtain the new NFL Game Pass mobile application. Finally, the email included OverTier Operations' name and post office box information.

21. On August 1, 2019, when the plaintiff's subscription for the 2019 Season became active, the applicable Terms and Conditions (DEF0001521-DEF0001528), explicitly stated in section 2.1, "Who we are. Overtier Operations who is the official licensee of the content material and Deltatre S.p.A. who operates the platform and deals with customer queries. As a customer you are contracted with both entities."

22.  On August 28, 2019, the email identified as DEF0001012-DEF0001016 was sent by OverTier Operations to the sietelgill account informing him that his NFL Game Pass Pro subscription for the 2019 Season was active until August 1, 2020. The email was opened once at 10:54 p.m. the same day it was received. The bottom of the email provided a hyperlink to the applicable Terms and Conditions for the 2019 season, identified as DEF0001521-DEF0001528, which noted that subscribers were contracting with OverTier Operations and Deltatre S.p.A.

23.  On October 29, 2019, an email was sent to all NFL Game Pass Australian subscribers, informing them of changes that were made to the Terms and Conditions for the 2019 Season. A copy of the email, identified as DEF0001011, was sent to the sietelgill account and was opened once at 11:06 a.m. the same day it was received, October 29. Within the body of the email, users were notified of the changes to the 2019 Terms and Conditions and invited subscribers to "please review the new Terms and Conditions in full here." A hyperlink was available on the text "here" that, when clicked, redirected users to the updated 2019 Terms and Conditions, identified as DEF0001529-DEF0001537. The Terms and Conditions were updated to include changes to Clause 14 to ensure compliance with certain Australian marketing laws. Clause 2.1 of the updated Terms and Conditions remained the same as the earlier 2019 Terms and Conditions (DEF0001521-DEF0001528), which informed subscribers that they were contracting with OverTier Operations and Deltatre S.p.A. in connection with the NFL Game Pass International subscription. The email continued, stating "If you continue to use our products and services on or after October 29, 2019, you are agreeing to the updated Terms and Conditions."

24. I am competent to testify to the matters set forth in this affidavit, which is made on the basis of my personal knowledge and my personal review of the records of OverTier Operations reviewed in this affidavit.

25. This affidavit may be submitted to the court in connection with any motion filed in the above-styled legal action.

Dated: May _05_, 2022

_____
RICHARD JOHNSTON

Sworn to before me this

_05_th day of May, 2022 BY RICHARD JAMES JOHNSTON

Notary Public

Kurupath Sathyanath Sreekumar
Notary Public (England & Wales)
Place:- LONDON, WC2B 6NY
Protocol No:- 009 - 522
Date:- 05 - 05 2022
email:- info@holbornnotary.com
Phone:- 00442072052020

{N2113087.1 }