**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SIETEL SINGH GILL, individually and on behalf of other similarly situated individuals,<br><br>                               Plaintiffs,<br><br>          v.<br><br>NATIONAL FOOTBALL LEAGUE, and NFL ENTERPRISES LLC,<br><br>                             Defendants. | Case No. 1:21-cv-01032-PAE |

## MEMORANDUM OF LAW IN REPLY AND IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**LONDON FISCHER LLP**
**59 MAIDEN LANE**
**NEW YORK, NEW YORK 10038**
**(212) 972-1000**

{N2195981.2 }

**Table of Contents**

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT ...................................................................................................................3

    I.    Plaintiff Has Provided No Evidence That His 2013 Contract With Defendants Continued Through The 2020 Super Bowl And Plaintiff Has Failed To Establish That The Clear And Unambiguous 2019 Terms and Conditions Was Not The Controlling Contract For His Use of Game Pass International For The 2019 NFL Season. ........................................................................................................................3

        A.    Plaintiff's 2013 Subscription Contract Was Terminated After the Completion of the 2013 NFL Season As Explicitly Set Forth In The Terms & Conditions. ...................................................................................3

        B.    Plaintiff Agreed To The 2019 T&C For The 2019 NFL Season And Paid For The Game Pass International Subscription To Entities Other Than Defendants. ....................................................................................4

        C.    Renewing by Auto-Payment Did Not Create An Indefinite Contract Between Plaintiff And Defendants. ...................................................................6

        D.    Plaintiff Mistakenly Argues That The Defendants Attempted A Contract Novation When In Fact No Contract Ever Existed Between The Parties In 2019. .........................................................................................7

    II.    The Evidence Establishes Plaintiff Received Reasonable And Ample Notice Of The 2019 Terms And Conditions And Plaintiff Elected To Purchase The 2019 Subscription For Game Pass International. .............................................................8

    III.    Game Pass International's Lawful Use Of The NFL's Logo And Brand Does Not Create An Implied Contract Or An Implied Warranty Between Defendants And Plaintiff. ......................................................................................................10

CONCLUSION ................................................................................................................10

## Table of Authorities

**Cases**                                                                                          **Page(s)**

*Atl. Neurosurgical Specialists, P.A. v. Multiplan, Inc.*,
   2022 U.S. Dist. LEXIS 8733 (S.D.N.Y. 2022) ................................................................ 10

*Atlantic Mutual Ins. Co. v. Balfour MacLaine Int'l Ltd.*,
   85 F.3d 68 (2d Cir. 1996) .................................................................................................. 7

*Bassett v Elec. Arts, Inc.*,
   93 F Supp 3d 95 (E.D.N.Y. 2015) ................................................................................ 9-10

*Blue Citi, LLC v. 5Barz Int'l, Inc.*,
   2017 U.S. Dist. LEXIS 233128 (S.D.N.Y. 2017) ............................................................. 7

*Holland v. Fahnestock & Co.*,
   210 F.R.D. 487 (S.D.N.Y. 2002) ..................................................................................... 8

*Plastic Surgery Ctr., P.A v. Cigna Health & Life Ins. Co.*,
   2019 U.S. Dist. LEXIS 72174 (D.N.J. 2019) ................................................................. 10

*Rothstein v. Auto Club South*,
   2019 U.S. LEXIS 194851 *27-37 (S.D.N.Y. 2019) ....................................................... 10

*Sacchi v Verizon Online LLC*,
   2015 US Dist LEXIS 21349 (S.D.N.Y. Feb. 23, 2015) ..................................................... 9

*U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*,
   696 F. Supp.2d 428 (S.D.N.Y. 2010) ............................................................................... 5

*Valle v. ATM Natl., LLC, No. 14-cv-7993*,
   2015 U.S. Dist. LEXIS 11788 (S.D.N.Y. Jan. 30, 2015) .................................................. 9

*Yahaya v. Hua*,
   1989 U.S. Dist. LEXIS 14115 *4 (S.D.N.Y. Nov. 28, 1989) ........................................ 8, 9

**Rules**

Federal Rule of Civil Procedure 56 ...................................................................................... 10

{N2195981.2 }                                                                  iii

**PRELIMINARY STATEMENT**

Plaintiff's opposition to Defendants', National Football League ("NFL") and NFL Enterprises LLC ("NFLE") (collectively, "Defendants"), Motion for Summary Judgment fails to raise any triable issue of material fact suggesting that his Game Pass International subscription contract for the 2019 NFL Season was with the Defendants; and, as such, Defendants' motion should be granted, and the action dismissed with prejudice.

The question before this Court is whether a contractual relationship existed between Plaintiff and the Defendants in connection to Plaintiff's streaming of the 2020 Super Bowl. The facts, evidence, and the law irrefutably prove that the answer to that question is ___no___ thereby warranting dismissal of the Amended Complaint.

Plaintiff's opposition ignores the undisputed facts submitted to the Court and the clear and unambiguous terms and conditions agreed to by Plaintiff for his use of Game Pass International for the 2019 NFL Season. Plaintiff improperly seeks to manufacture an indefinite time period to extend the expired terms of the 2013 contract he entered with the NFLE. This argument is wholly contradicted by the contract itself and Plaintiff's own responses to Defendant's Rule 56.1 Statement. Plaintiffs cannot refute the fact that the 2013 contract expired, is non-applicable, and the only controlling contract is the 2019 Terms and Conditions ("T&C") entered with parties other than the Defendants.

Plaintiffs' opposition merely claims that Plaintiff continuously auto renewed his subscription each year and in doing so completely fails to address, refute, or rebut the testimony and affidavit of Max Boigon that confirmed the one-year subscription period and, importantly, that Plaintiff **did not** automatically renew Game Pass International for the 2017 NFL Season. [Doc. No. 78, ¶¶ 12-13]. In fact, the 2017 NFL Season was not auto-renewed, Plaintiff registered for a seven (7) day trial and at its conclusion, purchased the full season subscription. (*Id*. at ¶13). Once again, in 2018 Plaintiff did not automatically renew his Game Pass

International subscription. (*Id*. at ¶14). Plaintiff made a one-time payment for the 2018 NFL Season subscription to Game Pass International. (*Id*.). Plaintiff offered no evidentiary proof to establish that auto renewal payments occurred continuously from 2013 through 2019 and cannot refute the clear evidence that his subscription was not auto renewed each and every year. Plaintiff's futile attempt to extend the 2013 terms and conditions should be completely disregarded.

Plaintiff also argues that he was never advised of the new parties with whom he was contracting with prior to the 2019 NFL Season and his streaming of the 2020 Super Bowl. The evidence, however, establishes that Plaintiff received multiple written notices of changes prior to the 2019 NFL Season, including notice that his continued use of the subscription prior to the 2020 Super Bowl constituted his acceptance of those new terms and conditions and with whom he was actually contracting with. Plaintiff offers nothing to refute this apart from clearly distinguishable case citations and statements that Plaintiff did not remember receiving the notices or opening the emails of those notices[1]. Defendants are entitled to summary judgment, as the uncontroverted evidence shows that for the 2019 NFL Season Plaintiff contracted with OverTier and Deltatre, not the NFL or NFLE.

Plaintiff's final, and equally unavailing, attempt at trying to avoid summary judgment is to claim, without any legal support, that OverTier and Deltatre's licensed use of the NFL logo and branding somehow created an implied contract between Plaintiff and the NFL. Accepting that argument opens the flood gates as a contractual relationship would arise whenever anyone watches an NFL game broadcast, or any sporting event for that matter, on a television network or cable outlet. Similarly, creating an implied contract between an end user of a product and any major brand by means of a license would directly contradict the intent of

---

[1] It is worth noting that Plaintiff testified that his executive assistance could have opened emails in his spam and trash folders in his Gmail account [Doc. No. 79:25-80-9], however, Plaintiff did not submit any evidence establishing the notifications from Game Pass were not received and/or opened.

a lawful license and affect corporations throughout the country. Unsurprisingly, Plaintiff has offered no legal support for this contention, nor is there any.

For all of these reasons, Plaintiff's opposition fails to raise any genuine dispute of material fact, and the Defendants' motion for summary judgment should be granted.

## ARGUMENT

I. **Plaintiff Has Provided No Evidence That His 2013 Contract With Defendants Continued Through The 2020 Super Bowl And Plaintiff Has Failed To Establish That The Clear And Unambiguous 2019 Terms and Conditions Was Not The Controlling Contract For His Use of Game Pass International For The 2019 NFL Season.**

Hoping to manufacture an issue of material fact, Plaintiff has raised multiple unsupportable positions arguing (1) the 2013 T&C never terminated resulting in an indefinite contract due to the automatic renewal feature for subscription payment, (2) the NFLE has attempted a contract novation to extinguish the 2013 T&C, (3) Plaintiff never agreed to the 2019 T&C, and (4) in the alternative, the Defendants are liable to Plaintiff under each prior contract from 2013 through 2018. Not only are each of these positions unfounded, but they are not supported by any evidentiary proof to defeat summary judgment.

A. Plaintiff's 2013 Subscription Contract Was Terminated After the Completion of the 2013 NFL Season As Explicitly Set Forth In The Terms & Conditions.

There is no dispute that Plaintiff and NFLE entered into a contract in 2013 for Plaintiff's use of Game Pass International for the 2013 NFL Season. Importantly, the evidence unequivocally establishes that the 2013 T&C terminated after the completion of the 2013 NFL Season. The parties' Joint Stipulation of Undisputed Facts states in pertinent part the following:

> Gill received an email from nflgamepass@neulion.com upon signing up for Game Pass International on September 10, 2013, which contained a section entitled, "Your Subscription," where it described the "Service" as "NFL Game Pass (Game Pass Season Plus Subscription)." The email also stated, among other things, the following: "Dear Seitel, Thank you for your recent purchase of NFL Game Pass! Your subscription is now active. … ***Your NFL Game Pass subscription for the 2013 season will end at 11:59 pm GMT on 31 Jul 2014***." (Doc. No. 70, ¶ 20)(Emphasis added).

The 2013 T&C state that "the term begins when you purchase and ends on the last day of the NFL's Regular Season." [Doc. No. 70-4, p. 3, ¶(e)]. Gill testified that he understood that he was accepting the 2013 T&C as set forth by the NFLE. [Doc. No. 75-7, p. 22]. Additionally, Max Boigon testified that the 2013 contractual relationship was just "[f]or the 2013/2014 season", and that Plaintiff entered into separate agreements with the Defendants for the 2014, 2015, and 2016 NFL Seasons. [Doc. No. 75-6, 44:16-25 – 45:1-6]. Mr. Boigon also confirmed that during the time period in which NFLE operated Game Pass International between 2013 and 2016, "the terms of service were seasonal, only existing for one year at a time." [*Id.*, 59:4-16]. Therefore, Plaintiff's position that the 2013 T&C continued through the 2019 NFL Season is completely meritless and should not be considered by the Court.

B. <u>Plaintiff Agreed To The 2019 T&C For The 2019 NFL Season And Paid For The Game Pass International Subscription To Entities Other Than Defendants.</u>

It remains an undisputed material fact that Plaintiff purchased his subscription of Game Pass International for the 2019 NFL Season on August 2, 2019 [Doc. No. 82, ¶ 32], and paid for his 2019 Game Pass International subscription to Overtier, registered as a "New Subscription." [*Id.*, ¶33]. It is also an undisputed fact that the Subscription Product Terms for the 2019 Game Pass International subscription stated that the Plaintiff was contracting with Overtier Operations and Deltatre. [*Id.*, ¶27] ("2.1 Who we are. Overtier Operations who is the official licensee of the content material and Deltatre S.p.A. who operates the platform and deals with customer queries (referred to as "we", "our" and "us"). *As a customer you are contracted with both entities*.")(emphasis added). There is also no dispute that Plaintiff utilized Game Pass International for the 2019 NFL Season, as he wrote an email stating "I have been watching games on my subscription successfully all season and have a paid membership till mid 2019 with NFL Game Pass." [Doc. No. 75-7, 33:6-25-34:1-24].

In opposition, Plaintiff alleges that he did not agree to enter into a new subscription contract in 2019 with third-parties. [Doc. No 87, Section III, pp. 16-17]. Plaintiff's position, however, is not supported by any factual evidence. Rather, Plaintiff presents a series of legal arguments, none of which has merit. Plaintiff relies upon this Court's decision in *U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 696 F. Supp.2d 428 (S.D.N.Y. 2010) to argue that the termination date of the terms and conditions are ambiguous and that Defendants are urging the court to use a different interpretation of the plain contract language. [Doc. No 87, Section III, p. 16]. This Court in *U.S. Bank* addressed whether the term "termination" has two (similar) meanings and determined that the phrase "termination of any agreement" to mean "an end to the existence of any agreement." *U.S. Bank*, supra at 440. This Court's interpretation of the contract in *U.S. Bank* has no to relevance or bearing on the terms and conditions before the Court in this matter. The facts, testimony, and contractual language all irrefutably confirm in plain language that the "termination" of Plaintiff's Game Pass International subscription occurred on a yearly and seasonal basis wherein Plaintiff was obligated to accept and agree to new terms and conditions for the following season. [Doc. No. 82, ¶¶27, 32-33; Doc Nos. 75-3,4,5; Doc. No. 70-4,8; Doc. No. 75-6, 44:16-25 – 45:1-6, 59:4-16]. Not only did Plaintiff mutually agree to the 2019 T&C, he paid for the subscription, and utilized Game Pass International for the entire 2019 NFL Season. [Doc. No. 82, ¶32; Doc. No. 75-7, 33:6-25-34:1-24]. Moreover, had Plaintiff ultimately decided not to continue his use of Game Pass International for the 2019 NFL Season, he had the option to terminate the contract and receive a refund within 14 days of his subscription dates (August 2, 2019), which he never did. [Doc. No. 70-10, Section 7.3].

Plaintiff cannot circumvent the evidence proving that each season's respective one-year terms and conditions controlled the scope of services provided to the Plaintiff for Game Pass International. Specifically, Plaintiff has not provided any evidence whatsoever

that demonstrates that any T&C other than the 2019 T&C and contractual relationship with Overtier and Deltatre was controlling at the time Plaintiff watched the 2020 Super Bowl that concluded the 2019 NFL Season. For these reasons, it is unequivocally clear that Plaintiff did not ever have a contract with the Defendants for the 2019 NFL Season, but the contract was between Plaintiff and Overtier and Deltatre.

C.    Renewing by Auto-Payment Did Not Create An Indefinite Contract Between Plaintiff And Defendants.

Plaintiff argues that the auto-renew option for payment of the Game Pass International subscription created an indefinite contract with the Defendants. The contractual terms and the testimony do not evidence or support any such theory. Mr. Boigon confirmed and testified that "the terms of service cannot be renewed for another season . . [t]hey are only for a single season." [*Id.*, 63:1-6]. Importantly, although the "payment would renew, a new term of service would begin." [*Id.*, 64:2-3]. Therefore, a Game Pass International subscriber could opt for automatic renewal payments but would be obligated to accept the new terms and condition for the respective season in which the subscriber is purchasing.

Accepting Plaintiff's argument that the autorenewal continued from his initial 2013 T&Cs is still insufficient to defeat summary judgment. The evidentiary proof submitted in support of summary judgment, i.e., Declaration of Max Boigon [Doc. No. 78], states that Plaintiff ***did not*** purchase Game Pass Season Plus Pass for the 2017 Season by automatic payment renewal. [Doc. No. 78, ¶12]. Rather than purchasing the season on automatic renewal, Plaintiff registered for a seven-day free trial period and on September 17, 2017 he made a one-time, single payment for the subscription for the 2017 NFL Season. [*Id.*, ¶13]. Moreover, Plaintiff once again failed to auto-renew his payment for the 2018 NFL Season. [*Id.*, ¶¶14-15]. Plaintiff has failed to provide a scintilla of evidence that proves the

{N2195981.2 }                                6

automatic renewal payment option continued each and every year from 2013 through 2019. Accordingly, even if Plaintiff's theory had merit, the facts and evidence fail to support it.

          D.    <u>Plaintiff Mistakenly Argues That The Defendants Attempted A Contract Novation When In Fact No Contract Ever Existed Between The Parties In 2019.</u>

Plaintiff continues to argue, unsuccessfully, that a contractual relationship existed between Plaintiff and Defendants for the 2019 NFL Season. Plaintiff argues that "the NFL attempted a contract novation, washing its hands of its previous contractual obligations to Plaintiff making OverTier and Deltatre the new counterparties." [*See* Doc. No. 87, p. 14]. Plaintiff cannot refute that Game Pass International only provided a single season on a one-year basis. Plaintiff's new argument that there was a contract novation ignores that there was no contract with any NFL entity at the outset of the 2019 NFL season from which a novation could have been created.

In support of this theory, Plaintiff relies upon this Court's decision in *Blue Citi, LLC v. 5Barz Int'l, Inc.*, 2017 U.S. Dist. LEXIS 233128 (S.D.N.Y. 2017) addressing a breach of a convertible note and *Atlantic Mutual Ins. Co. v. Balfour MacLaine Int'l Ltd.*, 85 F.3d 68 (2d Cir. 1996) addressing a post-trial appeal concerning insurance coverage of coffee that disappeared from two warehouses. These cases do nothing more than set forth the elements required for a contractual novation in New York: (1) a previously valid obligation, (2) agreement of all parties to a new contract, (3) extinguishment of the old contract, and (4) a valid new contract. *See*, *Atlantic Mut.*, 85 F.3d 82-83. The seasonal terms and conditions entered into by Plaintiff for Game Pass International expired and terminated at the conclusion of each season. A contract novation cannot be called into question as the prior season's contract is not being "extinguished" for the promise of a new valid contract, but it is a one-year contract that terminates its service upon completion of the season. Here, Plaintiff consented to a new, one-year contract with the Defendants for

the 2013 NFL Season through the 2016 NFL Season[2]. In 2019, Plaintiff entered into a separate, distinct, and independent contract with OverTier and Deltatre for the 2019 NFL Game Pass Subscription, not a novation of any prior contract.

Moreover, the Courts have held that there must be a "clear and definite intention on the part of all the concerned parties" that there was an intent to create a new or substitute agreement by discharging the prior obligation. *Holland v. Fahnestock & Co.,* 210 F.R.D. 487, 498 (S.D.N.Y. 2002); *see also*, *Yahaya v. Hua*, 1989 U.S. Dist. LEXIS 14115 *4 (S.D.N.Y. Nov. 28, 1989). The facts before this Court could not be further from this scenario. The Defendants never intended to substitute a prior season's terms and conditions for the next season. In fact, the T&C for Game Pass International were "seasonal agreements, for one year." [Doc. No. 75-6, 59:6-10]. Therefore, Plaintiff's attempt to argue that the Defendants failed to create a contract novation should be disregarded as factually and legally inapplicable to this matter.

## II.    The Evidence Establishes Plaintiff Received Reasonable And Ample Notice Of The 2019 Terms And Conditions And Plaintiff Elected To Purchase The 2019 Subscription For Game Pass International.

Plaintiff, in a wholly conclusory fashion, argues that reasonable notice of the 2019 T&Cs is disputed because Plaintiff does not remember opening any emails, as indicated by the data evidence [Doc. No. 74, ¶¶ 18-23], since his executive assistant had a practice of opening emails that went to Spam or Trash. [Doc. No. 79:25-80-9]. Interestingly, Plaintiff never stated, testified, or refuted that the emails were ***not*** received and/or ***not*** opened. Additionally, as mentioned above, Plaintiff used Game Pass International for the 2019 NFL Season and paid its new contracting party directly – not either Defendant – for his use. [Doc. No. 82, ¶¶32-33].

---

[2] Although Perform was the licensed vendor utilized by the NFL and NFLE for Game Pass International, as set forth in detail above, Plaintiff entered into new, non-auto-renewed contracts for the 2017 and 2018 NFL Seasons.

The moving papers and the evidentiary support show that in 2019, Plaintiff received email notifications of the 2019 T&Cs *prior* to the 2019 NFL Season on June 19; July 1 and 16; and August 1 and 28, and subsequently Plaintiff received updated T&Cs on October 29, 2019. [Doc No. 70, ¶¶ 25-28, 34, 36; Doc. No. 74, ¶¶ 18-23]. There is no dispute to the fact that Plaintiff received these emails. [*Id.*]. Plaintiff opened and accessed each of these emails. [Doc. No. 74, ¶¶ 18-23]. There is no evidentiary support to refute this fact.

Plaintiff's choice to simply ignore the applicable 2019 T&Cs and the contents of the numerous emails as to those T&C precludes any claim of ignorance as to who he was contracting with for his paid use of Game Pass International in 2019. [Doc No. 70, ¶¶ 31, 35]. The bottom of the email communications even identified "OverTier Operations" had Plaintiff elected to read it. [Doc. Nos. 70-9, 70-11, 70-12, 70-15, 70-16]. This Court addressed a similar issue in *Valle v. ATM Natl., LLC*, No. 14-cv-7993, 2015 U.S. Dist. LEXIS 11788 (S.D.N.Y. Jan. 30, 2015), which Plaintiff fails to distinguish. Plaintiff cannot and has not disputed or distinguished the finding in *Valle* that "customers accept revised terms of their accounts by continuing to use their accounts after receiving revised terms." *Id*. at 3. Rather, Plaintiff argues that the factual scenarios between this action and *Valle* differ as the 2019 T&C were continuing and indefinite from 2013 and Plaintiff was not provided any time to demand a refund for his 2019 subscription. [Doc. No. 87, Section III (C), p. 27]. As addressed in detail above, neither of those points are correct. The consistent approach taken by this Court, and others, is that continued use of a subscription service after receiving notice of the changes in the T&C is an appropriate form of acceptance of those changed terms. *See Sacchi v Verizon Online LLC*, 2015 US Dist LEXIS 21349, at *20 (S.D.N.Y. Feb. 23, 2015) (holding continued use was a valid form of acceptance by plaintiff to changes to terms and conditions.); *see also Bassett v Elec. Arts, Inc.*, 93 F Supp 3d 95, 105 (E.D.N.Y. 2015) (holding new terms posted on a service's website and providing plaintiffs with an opt-out period was enough to make changes in terms

enforceable). As such, this Court should refer to its decision in *Valle* and bind Plaintiff to the 2019 T&C entered with Overtier and Deltatre warranting summary dismissal of this action.

III.    **Game Pass International's Lawful Use Of The NFL's Logo And Brand Does Not Create An Implied Contract Or An Implied Warranty Between Defendants And Plaintiff.**

Plaintiff argues that the relationship of the NFL to Game Pass International is "so close" that there is functional equivalency of privity between Defendants and Plaintiff. Plaintiff is mistaken and improperly attempts to create privity where none exists. The use of trademarks and logos creates neither an implied-in-fact contract nor apparent authority. *Rothstein v. Auto Club South*, 2019 U.S. LEXIS 194851 *27-37 (S.D.N.Y. 2019); *Atl. Neurosurgical Specialists, P.A. v. Multiplan, Inc.*, 2022 U.S. Dist. LEXIS 8733 (S.D.N.Y. 2022); *Plastic Surgery Ctr., P.A v. Cigna Health & Life Ins. Co.*, 2019 U.S. Dist. LEXIS 72174 (D.N.J. 2019). In *Rothstein*, the plaintiff sought to hold the American Automobile Association ("AAA") contractually liable for Auto Club South, a regional club servicing AAA members, for hotel rates purchased online. *Rothstein*, supra. This Court dismissed the breach of contract claim against AAA as it was not a party to the contract and AAA had no apparent authority over the Auto Club South. *Id*. at *29-32. The use of AAA logos or trademarks in the Club South Handbook was not sufficient to create apparent authority where there is no evidence that AAA drafted, approved, or distributed the handbook. *Id*. at 30. Moreover, the plaintiff paid annual dues to Auto Club South for the membership benefits. *Id*. at 5. Similarly, here, Overtier was the licensee of NFLILI. [Doc. No. 70-2 and 3]. Overtier's use of the NFL's logo and trademark pursuant to the license agreement does nothing to create an implied-in-fact contract as the 2019 T&Cs were issued by Overtier and Deltatre. Plaintiff's contractual claims must be dismissed in their entirety.

## CONCLUSION

For the foregoing reasons, the Court should grant the Defendants' motion for summary in its entirety pursuant to Federal Rule of Civil Procedure 56.

Dated: New York, New York
       July 29, 2022

                                   Respectfully submitted,

                                   LONDON FISCHER LLP

                                   *Thomas A. Leghorn*

       By: _____

                                   Thomas A. Leghorn
                                   Jason M. Myers
                                   *Attorneys for Defendants*
                                   National Football League and
                                   NFL Enterprises LLC
                                   59 Maiden Lane
                                   New York, New York 10038
                                   (212) 972-1000
                                   Fax (212) 972-1030
                                   File No.: 810.0567597

{N2195981.2 }                      11